COMMONWEALTH OF MASSACHUSETTS

Essex, ss

Superior Court
Civil Action
Dkt. No.: 12 - 0717 D

BBJ, INC, and
WESTON O. GRAVES, JR.
      Plaintiffs

v.

MILLERCOORS, LLC., NICHOLAS
T. LONG, its PRESIDENT, JAMES SHEEHY,
COORS BREWING COMPANY, PETER
SWINBURN, its CEO, MILLER
BREWING COMPANY, A. DOUGLAS
BRODMAN, its PRESIDENT, RENEEE
CUSACK,  LOGOMASTERS, INC.
AND MARK BIERK, its PRESIDENT
      Defendants

CLERK

APR 1 2 2012

FOR THE COUNTY OF ESSEX
IN THE SUPERIOR COURT
FILED

## AMENDED VERIFIED COMPLAINT
## AND  JURY  DEMAND

1.     Plaintiffs, BBJ, Inc., a Massachusetts corporation d/b/a "Sports Team" and

Weston O. Graves, Jr., its President and as an individual (hereinafter "Graves"), bring

this action to seek damages from and enjoin Defendants for their fraudulent scheme to

induce Plaintiffs to purchase promotional and marketing material uniquely manufactured

for resale as print to order ("PTO") products for the exclusive benefit and purchase by

Coors distributors and brewery sales representatives for the calendar years 2007-2009.

2.     Over a period of months, Defendants' directly, or indirectly, by acts and conduct

of its employees and/or agents repeatedly carried out their scheme by:

a.     knowingly making false statements to induce Plaintiffs' reliance to expend

substantial sums of money to order uniquely manufactured products with Coors' products

and logos with a value of approximately $2,000,000.00; and

b. disseminating and publishing written statements in Miller, Coors and or MillerCoors internal e-mails that disparaged BB&J and Graves and required recipients of the disseminated e-mails to significantly restrict and/or no longer purchase the PTO promotional items from Plaintiffs;

c. impugn Plaintiffs' and cast aspersions about Plaintiffs to effectively eviscerate Plaintiffs' commercial ability to sell products and these actions may have precipitated a "sell off" of Plaintiffs substantial quantities of inventoried Coors' products on the part of Plaintiffs' existing clients who were all known to Coors and MillerCoors; and

d. Defendants solicited and accepted products and services from Plaintiffs and thereby induced Plaintiffs to:

      i. work for Defendants;

      ii. to expend substantial personal funds and credit to acquire the PTO products for Defendants benefit; yet

      iii. all the while Defendants never intended to pay Plaintiffs in total for the products provided or services performed; nor

      iv. to reimburse Plaintiffs' for the expenditure of personal funds spent to meet Coors PTO inventory requirements.

## PARTIES

3. Plaintiff, BB&J, Inc. ("BBJ"), is a Massachusetts corporation d/b/a "Sports Team" had a principal place of business at 140 Elliott Street, Beverly, MA at all time relevant to the allegations of this Complaint. Plaintiff Weston O. Graves Jr., individually, resides in Essex County, MA and was President of BB&J, Inc., at all times relevant to the subject matter of the Complaint. The Sports Team was both a profitable and well-respected company engaged in the business of selling marketing and promotional point of sale merchandise in Massachusetts and throughout the United States for major brewery and beverage company's wholesale distributors.

4.      Defendant, MillerCoors, LLC, is a foreign corporation organized in the State of Delaware but is duly registered in the Commonwealth of Massachusetts.  Its resident agent is CT Corporation System, 155 Federal Street, Boston, MA 02110.

5.      Defendant, Nicholas T. Long, is identified as the President of MillerCoors, LLC in various documents and material in the possession of Plaintiffs, including the company's 2009 annual report filed in the Secretary of State's Office in Boston, MA. Long's usual business address is located at 250 S. Wacker Drive, Ste 800, Chicago, Illinois 60606-5888.

6.      Defendant, Coors Brewing Company, is a foreign corporation organized in the State of Colorado but is duly registered to do business in the Commonwealth of Massachusetts.  Its resident agent is CT Corporation System, 155 Federal Street, Boston, MA 02110. Coors Brewing Company's usual business address is at 1225 17th Street, Denver, CO 80202.

7.      Defendant, Peter Swinburn, is identified as the CEO for Coors Brewing Company in various documents and material in the possession of Plaintiffs, including the company's 2009 annual report filed in the Secretary of State's Office in Boston, MA. Swinburn's usual business address is located at 1225 17th Street, Denver, CO.

8.      Defendant, Miller Brewing Company, is a foreign corporation organized in the State of Wisconsin but is duly registered to do business in the Commonwealth of Massachusetts.  Its resident agent is CT Corporation System, 155 Federal Street, Boston, MA 02110. Miller Brewing Company's usual business address is at 3939 West Highland Blvd., Milwaukee, WI 53208.

9.      Defendant, A. Douglas Brodman is identified as President and Director, Miller Brewing Company in various documents and material in the possession of Plaintiffs, including the company's 2009 annual report filed in the Secretary of State's Office in

Boston, MA.  Brodman's usual business address is located at 3939 West Highland Blvd.,
Milwaukee, WI 53208.

10.     Defendant, Logo Masters, on information and belief, is a Missouri corporation
with its principal place of business at 1900A South Jefferson, St. Louis, Missouri 63104.

11.     Defendant, Mark Bierk, is listed as President and Founder of LogoMasters, Inc.,
with a usual business address at 1900A South Jefferson, St. Louis, MO 63104.  On
information and belief, Logo Masters unfairly induced an employee of the Sports Team
to accept employment from LogoMasters almost immediately upon the Sports Team's
notice of termination as a MillerCoors licensee and the breach of their PTO agreement
with Coors in April 2009.

12.     On information and belief, Defendant, James Sheehy, is the Purchasing Director
for MilerCoors with a usual place of business at 3939 West Highland Blvd., Milwaukee,
WI 53208.

13.     On information and belief, Renee Cusack, is a resident of Colorado, and  is a
licensing Program manager for Coors and MillerCoors and Cusack was the primary
contact for Plaintiffs during the time in which Coors and MillerCoors acted to destroy
Plaintiffs commercial business.

## JURISDICTION AND VENUE

14.     Plaintiffs, BBJ, Inc., and Graves, maintained their usual business address in Essex
County, Massachusetts at all times relevant to the facts and acts and conduct of the
Defendants in this matter.

15.     This court has personal jurisdiction over the Defendant's because at all material
times, Defendants' products, agents for and employees of the Defendants' either worked

in, and/or conducted business in and throughout Essex County, Massachusetts, and/or are otherwise subject to process here.

16.    This court has subject matter jurisdiction for the dispute in law and fact since the amount in controversy exceeds twenty-five thousand ($25,000.00) dollars.

17.    Venue rests in Essex County as it is the county in which Coors and MillerCoors agent, Rene Cusack traveled to solicit Plaintiffs participation in the PTO program in 2007 and it is the county in which: all the product purchased by Plaintiffs to supply Coors and MillerCoors' distributors were received, inventoried and distributed from when sold; and most, if not all, of Plaintiffs' witnesses reside in Massachusetts.

## FACTS

18.    On information and belief, BBJ, Inc. d/b/a the Sports Team was a long-standing and reliable licensee of Coors Brewing Company beginning in 1998.

19.    Similarly, on information and belief, the Sports Team was also a long-standing and reliable licensee of Miller Brewing Company as a "limited 3 state licensee beginning in 2003.

20.    In addition, on information and belief, the Sports Team began its licensee relationship with the Molson Brewing Company in 2001.

21.    In or about December 2005, BB&J's President, Weston O. Graves, Jr. was asked by a Miller distributor to provide to its owner, pre-paid American Express gift cards to be billed to the Miller distributor as other merchandise.

22.    On information and belief, Graves complied with the request and provided $15,000.00 worth of pre-paid gift cards to the Miller distributor for its use and provided

an invoice for the service and product BB&J provided to the distributor as other merchandise.

23.     Approximately one month later, a salesperson for BB&J, Glen Featherstone, was contacted by a Miller Brewing Company sales rep Steve Tierney who requested that the BB&J salesperson (Featherstone) provide to the Miller sales rep (Tierney), pre-paid gift cards to be billed to Miller in a manner similar to the purchase request initiated by the distributor in December 2005.

24.     On information and belief, Tierney, Miller Brewing Company's sales rep for the Massachusetts market made additional requests for pre-paid gift cards to be supplied by BBJ for the exclusive use by the Miller Brewing Company personnel and the prior method of billing the pre-paid gift cards as other merchandise was utilized each successive time the products and the service were provided by BB&J.

25.     In November 2006, BB&J, d/b/a the Sports Team submitted its Miller license for renewal to Miller and is contacted by a Miller corporate auditor, Tom Martinez regarding invoices submitted by BB&J to Miller that lacked shipping charges because the invoices were for the gift card purchases made by BB&J for the Miller distributor and the Miller rep Tierney.

26.     Shortly after, in or about November 2006, all of Miller's wholesale distributors in the Northeastern U.S. received a letter from a Miller employee, Larry Cesander that informed them that The Sports Team would no longer be a licensee for Miller going forward.

27.     For the calendar year 2006, BB&J, Inc.'s annual revenues reached $5,053,515.83 despite the loss of its Miller license for a period of approximately one month.

28.     After a meeting in December 2006 with Miller about the gift card issue, in February 2007, Miller Brewing Company renewed BB&J, Inc., d/b/a the Sports Team's license for the calendar year 2007.

29.     Prior to 2007, the Sports Teams principal business relationship with brewery companies was to act as and sell logoed merchandise as a "Licensed Promotional Merchandise" hereinafter "LPM") licensee primarily responded to beer distributors and brewery representatives for several national brewing companies.

30     In 2007, the Sports Team's business relationship with Coors expanded when, at Coors' request, made by Renee Cusack, Coors and the Sports Team entered into an agreement whereby Coors promised to buy from the Sports Team substantial amounts of PTO promotional merchandise for use by Coors' distributors in connection with several planned promotional campaigns Coors developed, implemented and supervised on a national scale each year.

31.     In July 2007, Renee Cusack, Coors lead licensing employee visits the BB&J corporate offices in Beverly, MA and initiated discussions with BB&J staff and personnel, as well as Graves, to consider becoming a Print to Order (hereinafter "PTO") distributor for Coors Brewing Company.

32.     Cusack explained to Graves and the BB&J staff that to become a PTO distributor, BB&J would be required to take on the purchase, receipt of and  the inventory of many, many more "big ticket Coors logo" items which were not carried by Licensed Promotion Merchandise licensees ("LPM's) of Coors.

33.     Cusack explained to Graves and the BB&J staff that participation in the PTO programs was run completely differently from the LPM program Plaintiffs had been a part of.  She also explained that PTO distributors would have to take on a larger array of "big ticket" items with leaner margins that were not products warehoused by a Coors LPM licensee.  She also explained that the PTO programs were thematic and event driven

7

marketing programs created by Coors solely for their distributors and representatives.
Cusack stated that Coors would send the PTO program flyer directly to customers (Coors
distributors, sales reps) and Cusack's office would receive, coordinate and book all the
orders as opposed to BBJ being required to do this task. In addition, Cusack told Graves
that the PTO program was a $25 million dollar a year program and there was no license
requirement to be a PTO supplier.

34.     In addition, Cusack stated that the PTO program was 100% funded by the
brewery so no outside customers would need to be solicited by BB&J to sell any of the
listed products versus the LPM program which was 50/50 co-op-ed.

35.     Cusack specifically informed Graves and his team at BB&J that a specific
condition required to be agreed to by the Sports Team was Coors Brewing Company
required that the Sports Team had to ensure Coors Brewing Company that the Sports
Team would have available specified amounts of particularly identified Coors
promotional marketing items in inventory for sale to Coors retailers and Coors
distributors at sale prices determined and set by Coors.

36.     Graves expressed his reasonable concern that: his company's and his agreement
to move forward as a PTO participant would require substantial amounts of capital;
required that he increase warehouse space at his company; and increase BB&J's staff
significantly. Graves was concerned that the increased investment(s) made by him could
jeopardize his business if the products Coors elected to sell were not purchased by the
brewery's distributors. In fact, the Coors LPM program had historically required only
$200,000 in inventory yet the PTO program would require approximately $2,000,000 in
inventory, a 10 fold increase of products required to be on-hand at all times.

37.     Renee Cusack stated to Graves that Coors promised that the Brewery would help
BB&J sell through all the PTO merchandise the company agreed to carry.

38.    BB&J agreed to become a PTO distributor for the Coors Brewing Company during the calendar year 2007, having relied on Cusack's representation and promise that Coors was funding the PTO program 100% and Cusack's representation that Coors will help BB&J sell through the products for anything that might not have been sold. Cusack further assured Graves that any unsold merchandise would be contained/offered in future themed PTO programs.

39.    BBJ's revenue for the calendar year 2007 totaled $6,582,057.38.

40.    BB&J received a license from Coors in 2008 to participate in the LPM program, too.

41.    BBJ received a PTO purchase order from Coors for PTO merchandise in the amount of $1,900,000.00 for the purchase of one million nine hundred thousand one dollar items as an inducement to Plaintiffs to raise its inventory amounts so that they would participate in the PTO program by at least the PO amount for BB&J's participation in the program going forward.

42.    On information and belief, Coors Brewing Company and Miller Brewing Company created a merged business entity known as Miller Coors on or about June 28, 2008.

43.    BBJ's revenue for the calendar year 2008 totaled $8,766,393.80.

44.    Based on the fact of the merger of the two brewing entities, it was the reasonable expectation of the Sports Team that it would be a licensee for the merged entity of Coors Brewing Company and Miller Brewing Company known as MillerCoors, LLC in 2009 for the calendar year 2009 based on the discussions, interactions and statements of MillerCoors agents and representatives during the Fall and Winter of 2008 and 2009 and the license for the year 2009 was issued by MilerCoors on March 19, 2009.

45.    As a matter of fact, Plaintiffs, subsequent to Coors and Miller's merger, the Sports Team remained a licensee for Miller and Coors and the parties underlying agreement regarding the purchase of promotional merchandise continued with Plaintiffs' expending substantial amounts of capital in November 2008 through April 13, 2009 to place product orders for the PTO catalogues prepared by Cusack's department for 2009, in 2008 and 2009.

46.    In April 2009, MillerCoors abruptly terminated the Sports Team's MillerCoors license when it informed Graves in a telephone call on April 13, 2009 that BB&J was terminated as a licensee effective May 13, 2009 and Plaintiffs were no longer going to be a PTO distributor either.  The conference telephone call was initiated by Renee Cusack and Al Hartung for MillerCoors and Plaintiff Graves listened along with Joe Presti, Sales Manager for BB&J.

47.    Subsequently, BB&J and Graves learned that the merged Coors and Miller entity breached Coors' expressed promise that it would help the Sports Team and be sure to enable the Sports Team to sell though its millions of dollars of purchased PTO inventory - products that were exclusively and solely available to Coors distributors and sales reps.

48.    MillerCoors then unfairly interfered with the Sports Team's ability to sell off its remaining inventory by 1) disseminating to individuals in the industry and companies the fact that MillerCoors had terminated its relationship with the Sports Team, 2) arranging for one of the Sports Team's key salespeople to quit his job and obtain employment with (LogoMasters) a primary competitor of the Sports Team and broadcasting this information to others, and 3) defaming the Sports Team and Mr. Graves.

49.    As a result of MillerCoors' wrongful conduct, the Sports Team was abandoned with approximately 515,000 MillerCoors branded items valued at approximately $2,000,626.00 in its warehouses, including Beverly, MA, on March 31, 2009, that Plaintiffs could sell only at "fire sale" prices, if at all.

50. Despite having a written agreement with Coors concerning the sale of merchandise to Coors related to the "Print to Order" program that Coors orchestrated several times a year, in which Coors distributors were expected to have on hand large amounts of promotional and point of sale merchandise according to the season or in connection with a big event such as the Super Bowl (hereinafter, "PTO" program), Plaintiffs' received no other PTO orders after April 13, 2009. Graves was startled, shocked and stunned, at the statements of termination made by Hartung and Cusack but asked if there was an opportunity for MillerCoors to reconsider their decision because of the magnitude of inventory that Sports Team had in its warehouse at that date and time. Graves was rebuffed by Hartung who stated to Graves that the decisions were final and that the decisions were made by James Sheehy, Director of Procurement for MillerCoors. As a consequence, of Coors unilateral decision to not place any PTO orders to the Sports Team after April 13, 2009, Sports Team was abandoned with more than 515,000 logoed, MillerCoors items valued at approximately $2 million that MillerCoors fraudulently induced Sports Team to bring into inventory.

## COUNT I – FRAUD and DECEIT

51. The plaintiffs repeat and re-allege all allegations contained above in paragraphs 1-50 of this verified complaint.

52. The Defendant's knowing and willful false statements made to Plaintiff Graves and employees of the Sports Team to induce their reliance to purchase substantial amounts of promotional material to wit, that "MillerCoors" promise to help sell through any products unsold (e-mail of Cusack and others) constituted fraud and deceit.

53. Defendants engaged in this fraudulent scheme knowingly and intentionally, and for the purpose of obtaining the Sports Team and Graves commitment to the Print to Order ("PTO") program for which Defendants knew or reasonably should have known the Sports Team would not sell and Defendants would be able to obtain these products at

bargain prices when Plaintiffs business was restricted from selling MillerCoors promotional items.

54.     Plaintiffs, the Sports Team and Graves justifiably relied upon Defendants' deceitful conduct and misrepresentations when Defendants agents knew that MillerCoors would not honor the Print to Order purchase order.

55.     As a consequence of Defendants' fraudulent and deceitful conduct, Plaintiffs, Sports Team and Graves have been deprived of property of substantial value and the Defendants have been and may continue to be unjustly enriched.

COUNT II – G.L. c. 93A §11

UNFAIR AND DECEPTIVE TRADE PRACTICES

56.     The plaintiffs repeat and re-allege all allegations contained above in paragraphs 1-55 of this complaint.

57.     Plaintiffs and Defendants are each persons engaged in the conduct of trade or commerce within the meaning of G.L. c. 93A.

58.     The Defendant's acts and conduct, as described in the preceding paragraphs, constitute unfair and deceptive acts and practices in the conduct of trade or commerce, in violation of G.L. c. 93A §§2 and 11.   Defendants' wrongful acts occurred primarily and substantially within the Commonwealth and were undertaken knowingly and willfully.

59.     As a consequence of the Defendants' knowing, willful and deliberately wrongful acts and conduct, Plaintiffs, Sports Team and Graves, have suffered the loss of both money and property, and the Defendants have been and may continue to be unjustly enriched.  Plaintiffs are reasonably entitled to treble damages for the unfair, deceptive and willful acts and conduct of Defendants to induce Plaintiffs to agree to become a PTO distributor when Defendant knew or reasonably should have known that Coors and

MillerCoors would not assist Plaintiffs to sell through their branded and logoed print to order products manufactured uniquely and specifically for Defendants' interests.

## COUNT III
## INTENTIONAL AND/OR NEGLIGENT MISREPRESENTATION

60.     The plaintiffs repeat and re-allege all allegations contained above in paragraphs 1-59 of this verified complaint.

61.     Coors, by and through its agent, Cusack, as senior Licensing employee for Coors and MillerCoors, represented to Plaintiff Graves that Coors would "honor" its PTO purchase order and assist Graves and Sports Team to sell through any product Sports Team was not able to sell that Sports Team had brought in/purchased for the PTO program .

62.     Coors, by and through its agent, Cusack, knew or reasonably should have known that Cusack's representation that Coors would purchase any products Sports Team could not sell was false and Cusack made it knowing its falsity but made the statement to induce Graves as Sports Team's principal to commit substantial amounts of money to fund the significant inventory amounts required to be a PTO level promotions distributor.

63.     In reasonable reliance on Cusack's false statement, Sports Team and Graves expended significant capital to purchase products it expected to be reimbursed for either by sale or assistance in selling through other PTO flyers because Cusack told Graves that if the products were not sold she would help sell through them yet Coors failed to honor its agent's representation.

64.     As a consequence of the Defendants' false and/or negligent misrepresentations Plaintiffs, Sports Team and Graves, have suffered the loss of both money and property, and the Defendants have been and may continue to be unjustly enriched.

## COUNT IV

## BREACH OF THE COVENANT OF GODD FAITH AND FAIR DEALING

65.    . The plaintiffs repeat and re-allege all allegations contained above in paragraphs 1-64 of this verified complaint.

66.    BB&J and Graves contracted with Coors and MillerCoors for the provision of providing uniquely manufactured and printed logoed promotional material and related services to the Defendants.

67.    Coors and MillerCoors acted to destroy or injure the right of BB&J and Graves to receive the fruits of the purchase order.

68.    Coors' and MillerCoors' actions breached the covenant of good faith and fair dealing that is implicit in the purchase order.

69.    This breach by Coors' and MillerCoors caused BB&J and Graves to suffer economic injury and substantial damages.

## COUNT V

## BREACH OF CONTRACT

70.    The plaintiffs repeat and re-allege all allegations contained above in paragraphs 1-69 of this verified complaint.

71.    Defendant Coors Brewing Company by issuing an authorized PTO purchase order to BB&J entered into a contractual relationship with Sports Team, the terms of which are set forth in the documents signed by Defendant's agent, on behalf of her principal, Coors Brewing Company.

72.     Under the specific terms of the purchase order agreement, Sports Team was required to purchase goods to a sufficient and identifiable quantity to provide the PTO customers reasonable assurances that the items in the Coors PTO flyer were on hand and the order was able to be readily fulfilled.

73.     Sports Team purchased the required variety and amount of goods specified by Coors by and through its agent, Cusack and the items were on hand and able to be readily distributed as required by the PTO purchase order.

74.     Sports Team expended substantial amounts of money to purchase unique and specific products that could not be resold to other customers since the items were customized and branded to the specifications of Coors.

75.     Coors breached the terms of the agreement when they declined to honor the PTO program condition that Coors would make Sports Team whole on the incident Sports Team did not sell through its PTO inventory (items it could not sell).

76.     As a consequence of the breach by Defendants', Plaintiffs, Sports Team and Graves, have been wrongfully damaged and deprived of valuable property and Plaintiffs have suffered the loss of both money and property, and the Defendants have been and may continue to be unjustly enriched.

COUNT VI

QUANTUM MERUIT

77.     The plaintiffs repeat and re-allege all allegations contained above in paragraphs 1-76 of this verified complaint.

78.     Coors by and through its agent Cusack agreed to and received from Plaintiff services in connection with the Plaintiffs substantial purchases of products required to participate in the PTO program and Defendants accepted Plaintiffs services by issuing the

Purchase order for $1.9 million dollars for the purchase of one million nine hundred thousand items by Coors.

79.      Despite its promise to Plaintiffs that Coors would assist with selling through its unsold PTO program inventory, Defendants have failed to compensate Plaintiffs for its efforts on behalf of Coors from which Coors benefited substantially.

80.      Plaintiffs expected compensation from Defendants when Sports Team performed the required services described in the PTO program and Defendants knew Plaintiffs expected compensation for the services rendered to it by Plaintiffs.  Indeed, on numerous occasions Defendants agreed to and promised to compensate Plaintiffs for the services provided in making the substantial inventory quantities to be available for Coors in its PTO program.

81.      Despite Plaintiffs performance of the services required of it by Defendants, and despite Defendants acceptance of Plaintiffs services up to April 13, 2009, Coors failed and continues to fail and refuses to compensate Plaintiffs for the full value of its services by assisting Plaintiffs' to sell through the PTO inventory. Defendants' failure and refusal has substantially damage Plaintiffs, for which damage Coors Defendants are liable.

82.      Accordingly, Defendant owes Plaintiffs the full value of the services that Sports Team provided to Defendants, and which Defendants accepted from Sports Team by identifying the fact that Sports Team was an appropriate vender for the PTO program for the calendar year 2009, with the value to Coors of those services or damages in that same amount.

## COUNT VII
## PROMISSORY ESTOPELL

83.      The plaintiffs repeat and re-allege all allegations contained above in paragraphs 1-82 of this verified complaint.

84.     Plaintiffs state and allege that BB&J and Graves relied upon the statements and promises of Renee Cusack, as the Coors contact relevant to the PTO program that Coors was 100% committed to the PTO program and that Coors would assist the Sports Team in selling through the inventory.

85.     Plaintiffs' reasonable expectation of payment for products and services was buttressed by Coors proffer of the open Purchase Order for $1.9 million to demonstrate to BB&J, Graves and the Sports Team that the PTO program was not a part of the licensee agreement because no demonstration of payment was required on the part of BB&J, Graves and the Sports Team to participate in the LPM licensee program since its commercial benefits were quantifiable from prior year's results.

86.     Upon Plaintiffs demand and request to Coors to pay for the inventoried products that were not saleable by the Sports Team, Coors refusal to pay as expected by Graves caused the Sports Team to suffer substantial economic injury.

87.     Defendant's refusal to pay on demand pursuant to the expressed, executed purchase order provided by Coors to the Sports Team is not reasonable based on the fact that the PTO program is not a licensed activity and Coors had assured Graves and BB&J that it would sell through the products Coors required the Sports Team to procure for its benefit.

## COUNT VIII
### INTERFERENCE WITH ADVANTEGEOUS COMMERCIAL RELATIONS

88.     The plaintiffs repeat and re-allege all allegations contained above in paragraphs 1-86 of this verified complaint.

89.     Plaintiff and  many Customers, not limited to but including:  Kramer Beverage, Burke Distributing, Manhattan Beer, Capital Distributors, Kohler Distributing, Allstar

Distributing and Fuhrer Wholesale each had a working relationship in force on the date and time Defendant issued its PTO purchase order to Plaintiff and Plaintiff purchased the specific items Defendant required to be available for the PTO program and the parties reasonably believed this agreement would be effective for the calendar year 2009.

90.     Defendant knew of the ongoing working relationships between Plaintiff and Customers and Coors acts and conduct to disparage and inform specific customers of Plaintiffs exclusion from the PTO program was a substantial detriment and impediment to Plaintiff being able to perform its obligations to Customers under their contractual agreement.

91.     The actions of Defendant Coors to induce Customers to not perform its obligations were improper in motive and means, including but not limited to Coors misrepresentation that Sports Team was not fulfilling its obligations under the contract.

92.     As a direct and proximate result of Coors actions, Sports Team has suffered substantial damages because other customers of Plaintiffs knew of the existence of the termination of Sports Team as a PTO participant by Defendant and Sports Team was effectively not able to sell through any of the PTO items.

COUNT IX

COMMERCIAL DISPARAGEMENT

93.     The plaintiffs repeat and re-allege all allegations contained above in paragraphs 1-92 of this verified complaint.

94.     Defendants statements that Sports Team and its President, Weston O. Graves were not forthright and acted outside of Defendant's policies is false and untrue.

95.     By issuing false and untrue statements to customers of Sports Team and associates of Graves, Defendants published the disparaging statement to two or more people.

96.     Defendants negligently published the false and disparaging statements concerning Sports Team and Graves causing customers to regard Sports and Graves as dangerous and imputing deceit, dishonesty and reprehensible conduct to Sports Team and Graves.

97.     Defendant's statement that Graves was disingenuous is false and untrue and disparaged the products and reputation of Sports Team.

98.     By publishing the false and disparaging statements on the internet, Defendant published the disparaging statements to a wide range of persons in the public.

99.     Defendants published the false and disparaging statements about Graves and Sports Team, to cause Plaintiffs to suffer special and general damages, including the monetary loss of many customers, and injury to the reputation and ongoing business viability of Sports Team and of Graves in marketing promotional merchandise.

100.    Defendants published the statements with the knowledge the statements were false, or with reckless disregard to the falsity of the statements.


## COUNT X
### CIVIL RACKETEER INFLUENCED AND CORRUPT ORGANIZATION
(Defendant Miller Brewing Company, Inc. and MillerCoors)

101.    The plaintiffs repeat and re-allege all allegations contained above in paragraphs 1-100 of this verified complaint.

102. Coors and MillerCoors operate its brewery business in interstate commerce and are nationwide distributors of their brewed beverages and beverage products in the contiguous forty-eight states.

103. Coors and MillerCoors are required to observe the requirements of the United States Code in the conduct of its business in interstate commerce and is particularly susceptible to the precepts of 18 U.S.C §1961 which restricts, prohibits and makes unlawful the imposition of a bestowed gift to influence a gift recipient's conduct that may change or cause the recipient to act differently than it normally would pursuant to its legal duty.

104. Defendants and or its agents presumptively have a legal duty to not offer any inducements to any retail or wholesale distributors of its brewery products that would falsely reduce the price of its product to a retailer or conversely increase the products price to the public.

105. Defendants, Coors and MillerCoors, presumptively as a United States business entity are required to submit annual federal corporate tax returns to the Internal Revenue Service.

106. On information and belief, Defendants knowingly, or reasonably knowingly, may have submitted federal and state tax returns that may contain expenses incurred by the corporation from its agents and distribution sales personnel offering gift cards, trips and other inducements which may have included sexual favors of prostitutes to retailers or distributors of its brewery products.

107. On information and belief, Plaintiffs allege that Defendants knowingly provided false and incorrect information in that Defendants are expensing their costs of doing business that are not ordinary or necessary for the conduct of a business and/or are expenses that violate federal law specifically 18 U.S.C. §1961.

108.    Plaintiffs' allege that Defendants filing of false and misleading federal tax returns are a predicate act that violate the Civil RICO law and may entitle Plaintiffs to treble damages for the injury caused by Defendants predicate acts in the maintenance of its enterprise and the enterprises acts and conducts that violate §1961.

109.    Defendants acts and conduct to condone and support the unlawful expenditures of cash and cash equivalents that violate the Alcohol and Tobacco Tax Trade Bureau (hereinafter "TTB")rules and regulations has harmed Plaintiffs and their ability to conduct business in a fair and equitable manner.

110.    For these egregious acts and conduct, Defendants may be liable to Plaintiffs for the damages Plaintiffs suffered and continues to suffer due to the violations of law by Defendants.

## COUNT XI
### UNJUST ENRICHMENT

111. The plaintiffs repeat and reallege all allegations contained above in paragraphs 1-110 of this verified complaint.

112.    Defendants have been unjustly enriched at the expense of Plaintiff by using their products as promotional materials for a cost that was less than Plaintiffs' cost to purchase

113    On information and belief, Defendant received the benefit of promotional material that Plaintiff purchased by had to sell at reduced prices based on Defendants' declarations to distributors that Plaintiffs were no longer able to sell logoed products for Coors and/or MillerCoors.

114.    Upon information and belief, Coors and MillerCoors distributors received substantial amounts of BB&J's purchased promotional materials for less value than its costs and expected purchase prices due to the unfair and deceptive acts of Defendants.

115.   Upon information and belief, Defendants' knew or should have known they were being unfairly benefited by Plaintiffs' inability to sell through the products it purchased due to the acts and conduct of Defendants in terminating the LPM license and informing Plaintiffs' that they would not be a PTO distributor either.

116.   Defendant's retention of the benefit conferred upon them is inequitable.

## COUNT XII
## OPEN ACOUNT

117.   The plaintiffs repeat and re-allege all allegations contained above in paragraphs 1-116 of this verified complaint.

118.   Plaintiffs provided products and services to MillerCoors employees for use in promotional events that were specifically ordered by MillerCoors agents.

119.   MillerCoors agents received the products and or services requested to be provided by Plaintiff that the MillerCoors agents used for the purposes intended.

120.   Plaintiffs invoiced MillerCoors for the products shipped and Plaintiffs reasonably expected to receive payment for the invoices submitted.

121.   Defendants refused to pay the invoices submitted to it by Plaintiffs for which payment remains due and outstanding in an amount of more than $54,000.00.

122.   Plaintiffs have been harmed by Defendants refusal to pay for the purchase of products accounted for in an open account in the amount exceeding $54,000.00.

123.   In addition to abandoning the Sports Team and leaving it holding more than 515,000 Coors branded items in its inventory with a value exceeding $2 million, MillerCoors has refused to pay the Sports Team $54,000.00 for the merchandise

Plaintiffs did sell to agents of MillerCoors and that was received in good order by MillerCoors agents.

## COUNT XIII
## DECLARATORY RELIEF

124.   The plaintiffs repeat and re-allege all allegations contained above in paragraphs 1-123 of this amended verified complaint.

125.   A controversy in law and fact exists between Plaintiffs and the Defendants respective to the rights, duties and liability for goods provided and services performed by Plaintiffs for and on behalf of the various corporate Defendants.

126.   Plaintiffs' respectfully request that a Declaratory Judgment be entered in their behalf by the Court based on the facts, testimony and evidence presented at trial.

### JURY DEMAND

Plaintiffs hereby demand a Trial by Jury on all claims so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that they be awarded the following relief:

1.   Enter a Judgment in Plaintiffs favor and behalf on each and every Count of this Complaint;
2.   Damages in an amount determined to have been sustained by Plaintiffs;
3.   Pursuant to Count II GL c. 93A Unfair and Deceptive Trade Practices of the Complaint, double or treble the amounts awarded under the preceding paragraph, and reasonable attorney fees, pursuant to G.L. c. 93A, §11;
4.   Pursuant to Count X  Racketeer Influenced Corrupt Organization 18 USC §1961 of the Complaint, double or treble the amounts awarded under the preceding paragraph;
5.   The costs of this action;
6.   Prejudgment interest; and
7.   Such other and further relief as the court may deem just and proper.

## ATTESTATION OF AMENDED VERIFIED COMPLAINT

I, Weston O. Graves, Jr., do hereby depose under the pains and penalties of perjury that I have read the foregoing Amended Complaint and attest that I believe that, to the best of my knowledge and belief, the Amended Complaint is true and accurate.

_____
Weston O. Graves, Jr.


Respectfully submitted,
Plaintiffs
By and through their Attorney

_____
Richard A. Hayes, Esq.
BBO# 635793
Law Office of Richard A. Hayes
1146 Main Street, Suite 2
Haverhill, MA 01830

April 12, 2012