UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
BBJ, INC., et al.,                      )
                                        )
            Plaintiffs,                 )
                                        )
v.                                      )          Civil Action No. 12-11305-IT
                                        )
MILLERCOORS, LLC, et al.,               )
                                        )
            Defendants.                 )
_____)


REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTIONS TO DISMISS (## 10, 18)

September 30, 2014

KELLEY, U.S.M.J.


The plaintiff BBJ, Inc. ("BBJ") was a licensee of Miller Brewing and Coors Brewing,

selling merchandise such as t-shirts and hats with company logos printed on them to brewing

company distributors. Miller and Coors became MillerCoors LLC in 2008. Plaintiff Weston O.

Graves, Jr. ("Mr. Graves") is BBJ's president. In 2009, MillerCoors ended the relationship with

the plaintiff company, leaving it with a large amount of unsold inventory. Plaintiffs make many

claims against MillerCoors and others, including that MillerCoors violated an oral contract when

terminating their business relationship.

Defendants MillerCoors, LLC, Coors Brewing Company, Miller Brewing Company, and

Renee Cusack ("the MillerCoors defendants"), as well as defendants Logo Masters Inc. and

Mark Bierk ("the Logo Masters defendants"), have moved for dismissal of the amended

complaint filed against them by the plaintiffs, BBJ[1] and Mr. Graves, under Federal Rules of Civil

Procedure 12(b)(2) and 12(b)(6). For the reasons that follow, I recommend that the motions to

dismiss (## 10, 18) be ALLOWED. In addition, the Logo Masters defendants have moved for

the Court to award costs and fees against plaintiffs' counsel and plaintiffs under the Court's

"inherent powers," citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). (# 32 at 7) In a

later pleading, they again moved for costs, this time under 28 U.S.C. § 1927. (# 65) For the

reasons set out below, I recommend that these motions be DENIED.

I.      BACKGROUND

As stated above, BBJ is a Massachusetts company that sells promotional merchandise for

brewing and beverage companies. (Amended Complaint, # 1-1 at ¶ 3) Mr. Graves is BBJ's

president. *(Id.* at ¶ 1) In order to sell merchandise with companies' logos on it, BBJ has to enter

into licensing agreements, so as not to violate trademark laws. From 2003 through 2008, BBJ

had licensing agreements with Coors and Miller, so that BBJ was a "Licensed Promotional

Merchandise" licensee for these companies. In the amended complaint, this relationship is

referred to as the "LPM program."[2] (*Id.* at ¶¶ 18-20, 29, 33)

In July 2007, defendant Renee Cusack ("Ms. Cusack"), who was the Licensing Program

---

[1]BBJ does business as "The Sports Team." (# 1-1 at ¶ 3)

[2]For a few months in late 2006 and early 2007, BBJ's status as a Miller licensee was
suspended after an auditor noted irregularities in BBJ's invoices. (# 1-1 at ¶¶ 25-26, 28) The
irregularities related to multiple occasions when BBJ provided prepaid gift cards to Miller
distributors and sales representatives, but billed Miller for "other merchandise" in the amounts of
the gift cards. (*Id.* at ¶¶ 21-25)
    BBJ's decision to include these factual allegations in its amended complaint is curious.
The allegations appear to constitute admissions of improper and unethical – if not criminal –
business practices on BBJ's part. Moreover, they serve to undermine, rather than support, BBJ's
claims.

Manager for Coors, visited Mr. Graves to discuss a program that, at least according to the plaintiffs, was different from the LPM program. Ms. Cusack spoke with Mr. Graves about Coors' "Print to Order" ("PTO") program, which involved stocking and selling "substantial amounts" of "big ticket Coors logo" items in connection with several yearly "planned promotional campaigns." (*Id.* at ¶¶ 30-32) Ms. Cusack allegedly explained the following differences between the LPM program, in which Mr. Graves had been participating for several years, and the new PTO program:

- PTO distributors had to purchase and stock more Coors merchandise, including various specific items that BBJ had not carried in the past;

- PTO merchandise was for "thematic and event driven marketing programs";

- Coors (not BBJ) would send program flyers to customers, then "receive, coordinate and book all the orders";

- the PTO program generated substantial additional profits;

- the PTO program was completely funded by Coors, while BBJ's sale of LPM in the past had been "50/50 co-op-ed"; and

- "there was no license requirement to be a PTO supplier."

(*Id.* at ¶¶ 33-36)

In addition to explaining these distinctions, Ms. Cusack allegedly promised that Coors "would help [BBJ] sell through all the PTO merchandise the company agreed to carry." (*Id.* at ¶ 37) Based on these representations – in particular, the promise of Coors' assistance in selling the merchandise – BBJ agreed to become a PTO supplier. (*Id.* at ¶ 38) In February 2008, Coors issued a purchase order to BBJ for $1.9 million in unspecified PTO merchandise for delivery in 2008. (*Id.* at ¶ 41; # 14)

Coors and Miller formed a joint venture in June 2008, forming MillerCoors. According to the amended complaint, BBJ expected to continue its licensee relationship with the new entity and, thus, spent "substantial amounts of capital in November 2008 through April 13, 2009 to place product orders for the PTO catalogues prepared by Cusack's department for 2009." (# 1-1 at ¶¶ 44-45) In March 2009, as expected, BBJ entered into a License Agreement with MillerCoors for the 2009 calendar year. (*Id.* at ¶ 44, # 13) The License Agreement contained the following relevant provisions:

> [MillerCoors] hereby grants to [BBJ] for [2009], a non-exclusive, non-transferable right and license to use, manufacture, sell, distribute and advertise the Licensed Products . . . as identified in the Schedules, subject to the terms and conditions set out herein.

(# 13 at § 2.01)

> [BBJ] is responsible for maintaining a proper inventory level for any Licensed Product hereunder in order to process and ship orders received in a timely manner. Minimum and maximum inventory levels, all warehousing, insurance, and any other costs attributable to inventory are the sole responsibility of [BBJ].

(*Id.* at § 5.01)

> [BBJ] agrees not to use and hereby waives and disclaims any rights to use of the Licensed Property, Designs or other trademarks, copyrights, tradenames, slogans, or insignias of [MillerCoors], beyond the limited rights to use herein granted.

(*Id.* at § 8.05)

> Upon expiration or termination of this Agreement, . . . [BBJ] shall be entitled, for an additional period of two (2) months to continue to sell such Inventory. . . . Any inventory remaining after expiration of the two (2) month period shall immediately be destroyed or reprocessed in such a way that the Licensed Property is no longer used on the Licensed Products and at no cost whatsoever to [MillerCoors].

(*Id.* at § 10.02)

> This Agreement, including Exhibit A and the Schedules, shall constitute the entire

> Agreement between [BBJ] and [MillerCoors] with respect to the subject matter
> hereof; shall supersede all other previous negotiations, commitments and
> writings; and shall not be modified and/or altered in any manner except by a
> written instrument duly executed by the parties hereto.

(*Id.* at § 12.07)

In April 2009, MillerCoors announced its decision – made by defendant James Sheehy,

MillerCoors's Director of Procurement – to terminate BBJ's status as an LPM and PTO

distributor effective May 13, 2009.  (#1-1 at ¶¶ 46, 50)  BBJ received no PTO program orders

after April 13, 2009. (*Id.* at ¶ 50)  Thus, MillerCoors "breached Coors' expressed promise that it

would help [BBJ] and be sure to enable [BBJ] to sell though [sic] its millions of dollars of

purchased PTO inventory."  (*Id.* at ¶ 47)   According to the amended complaint, MillerCoors

also publicized the fact that BBJ was no longer a licensee, "defam[ed]" the plaintiffs,[3] and

"arrang[ed] for one of [BBJ's] key salespeople to quit his job and obtain employment with [Logo

Masters,] a primary competitor of [BBJ]."  (*Id.* at ¶ 48)  When the agreement was terminated,

BBJ had "515,000 MillerCoors branded items valued at approximately $2,000,626.00 in its

warehouses."  (*Id.* at ¶ 49)  In addition, MillerCoors had not paid BBJ invoices for merchandise

worth more than $54,000.  (*Id.* at ¶¶ 122-23)

The plaintiffs sued the defendants in April 2012 in the Essex County Superior Court for

the Commonwealth of Massachusetts, alleging thirteen causes of action: (I) fraud and deceit;

(ii) unfair and deceptive trade practices; (iii) intentional and/or negligent misrepresentation;

(iv) breach of the covenant of good faith and fair dealing; (v) breach of contract; (vi) quantum

---

[3]The plaintiffs allege the following "defamation": "statements that [BBJ] and . . . Graves
were not forthright and acted outside of Defendant's policies," (# 1-1 at ¶ 94), and a "statement
that Graves was disingenuous." (*Id.* at ¶ 97)

meruit; (vii) promissory estoppel; (viii) interference with advantageous commercial relations; (ix) commercial disparagement; (x) civil racketeer influenced and corrupt organization ("civil RICO"); (xi) unjust enrichment; (xii) open account; and (xiii) declaratory judgment. (# 1-1) The defendants removed the action to this Court on July 16, 2012. (# 1, 1-5) Thereafter, both the MillerCoors defendants and the Logo Masters defendants moved to dismiss the amended complaint. (## 10, 18) BBJ and Mr. Graves opposed both motions,[4] (## 25-26, 38) and the defendants replied (## 32, 37).

The motions were referred to then-Chief Magistrate Judge Leo Sorokin for a Report and Recommendation on October 15, 2012. (# 39) In January, 2013, Mr. Graves filed a Suggestion of Bankruptcy and moved to stay the proceedings. (# 48) At the same time, new counsel entered an appearance for Mr. Graves, attorney Laird J. Heal.[5] (# 49) Chief Magistrate Judge Sorokin stayed the case until June 2, 2014, when he issued an Order lifting the stay and noted, "Plaintiff alludes to an interest in possibly amending the pleadings or supplementing the papers given that prior counsel has been disbarred." He directed plaintiff to file a status report "explaining (1) whether it intends to amend the complaint; (2) whether its desired amendment moots any or all of Defendants' motion to dismiss (in Plaintiff's reasonable view); (3) whether it

_____

[4]The plaintiffs initially "question the right of [the MillerCoors] Defendants to file a responsive pleading," incorrectly suggesting the defendants failed to respond timely to the complaint in state court. (# 25 at 1-2) The parties agree the deadline for a responsive pleading was July 16, 2012. (*See id.*; # 37 at 4-5) The MillerCoors defendants' Notice of Removal was docketed with this court on July 16, 2012, served via first class mail on counsel for the plaintiffs the same day, and received by the state court soon thereafter. (# 1 at 9; # 23 at 1) *See* 28 U.S.C. § 1446(b), (d).

[5]The attorney who signed the amended complaint, Richard A. Hayes, was disbarred effective February 25, 2013. *See In Re : Richard A. Hayes,* No. BD-2013-011.

requests leave to replace certain memoranda with revised memoranda; and (4) Defendants' position on these issues. Counsel shall confer before filing the status report." (# 54)

Eighteen days later, on June 20, 2014, counsel filed a status report in which he notified the Court that the "Plaintiffs will request leave to file an amended Complaint" and asked for two weeks to do so. (# 57 at 1) Two weeks passed and plaintiffs did not file an amended complaint.

On July 7, 2014, the motions to dismiss (## 10, 18) were referred to the above Magistrate Judge. A motion hearing was set for August 21, 2014. The Court ordered the plaintiffs to file an amended complaint by July 25, 2014. (# 60) On July 25, 2014, the Court allowed the plaintiffs' motion for an additional week to file an amended complaint. (# 62) Plaintiffs never filed an amended complaint.

On August 20, defendant Logo Masters filed an "Emergency Motion to Continue August 21, 2014, Hearing, to Bar Amendment of Complaint, to Dismiss Per Plaintiffs' Judicial Admissions, and for Sanctions." (# 65) The Court denied the motion to continue and deferred ruling on the other grounds. (# 67) On August 21, the day of the hearing, the plaintiffs filed an opposition to Logo Masters' motion no. 65. (# 68)

On August 21, 2014, the Court held a hearing on the defendants' motions to dismiss and for sanctions (## 10, 18, 67) and took those motions under advisement.

II.     STANDARD OF REVIEW

On a Rule 12(b)(2) motion for lack of personal jurisdiction, the plaintiffs bear the burden of proving that the defendants are subject to the jurisdiction of Massachusetts courts. *Lechoslaw v. Bank of America N.A.*, 618 F.3d 49, 54 (1st Cir. 2010); *Adams v. Adams*, 601 F.3d 1, 4 (1st Cir. 2010); *Astro-Med, Inc. v. Nihon Kohden America, Inc.*, 591 F.3d 1, 8 (1st Cir. 2009);

*Massachusetts School of Law at Andover, Inc. v. American Bar Association*, 142 F.3d 26, 34 (1st

Cir. 1998). To meet this burden it must be shown that the defendants are subject to jurisdiction

under the Massachusetts long-arm statute, Mass. Gen. L. c. 223A, and under the strictures of

constitutional due process. *Bluetarp Financial, Inc. v. Matrix Construction Co.*, Inc., 709 F.3d

72, 79 (1st Cir. 2013); *Harlow v. Children's Hospital*, 432 F.3d 50, 57 (1st Cir. 2005); *Noonan

v. Winston Co.*, 135 F.3d 85, 89 (1st Ci r. 1998). When no evidentiary hearing is held, as in this

case, a *prima facie* standard applies. *Astro-Med, Inc. v. Nihon Kohden America, Inc.,* 591 F.3d 1,

8 (1st Cir. 2009); *Adelson v. Hananel*, 510 F.3d 43, 48 (1st Cir. 2007); *United States v. Swiss

American Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001).

In order to meet their burden under this standard, it is incumbent upon the plaintiffs to

"demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and

the Due Process Clause of the Constitution." *Negron-Torres v. Verizon Communications, Inc.*,

478 F.3d 19, 24 (1st Cir. 2007) (internal citation and quotation marks omitted). "To meet this

requirement, the plaintiff[s] must go beyond the pleadings and make affirmative proof." *U.S. v.

Swiss American Bank, Ltd.*, 274 F.3d 610, 619 (1st Cir. 2001) (internal citations and quotation

marks omitted). When evaluating whether the *prima facie* standard has been met, the court

"accepts properly supported proffers of evidence by a plaintiff as true[6] and makes its ruling as a

matter of law." *Id.* (internal citation and quotation marks omitted); *Astro-Med, Inc.*, 591 F.3d at

8; *Adelson*, 510 F.3d at 48 ("Under this standard, the court need only consider...whether the

plaintiff has proffered evidence that, if credited, is enough to support findings of all facts

---

[6]Any uncontradicted facts presented by the defendants are also considered. *See Adelson,* 510 F.3d
43, 48 (1st Cir. 2007); *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 123 (1st Cir. 2006);
*Massachusetts School of Law*, 142 F.3d at 34 (citation omitted).

essential to personal jurisdiction." (quotation marks and citations omitted)); *Harlow*, 432 F.3d at 57.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court "must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). This "highly deferential" standard of review "does not mean, however, that a court must (or should) accept every allegation made by the complainant, no matter how conclusory or generalized." *United States v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir. 1992). Dismissal for failure to state a claim is appropriate when the pleadings fail to set forth "'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir. 1997) (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988)).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. A court's assessment of the pleadings is "context-specific," requiring "the reviewing court to draw on its judicial experience and common sense." *Id.* at 679; *accord Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ.

P. 8(a)(2)); *accord Maldonado*, 568 F.3d at 268.

On a motion to dismiss, the court may consider documents beyond the complaint only if such documents: were "expressly incorporated" into the complaint; are undisputedly authentic; are "central to plaintiffs' claim[s]"; or are "sufficiently referred to in the complaint." *Watterson*, 987 F.2d at 3; *accord Graf v. Hospitality Mut. Ins. Co.,* 754 F.3d 74, 76 (1st Cir. 2014) *(*quoting *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33-34 (1st Cir. 2001)). The plaintiffs have not objected to the MillerCoors defendants' submission of a February 2008 purchase order and a March 2009 license agreement, both of which are explicitly referenced in the complaint. (*See* #1-1 at ¶¶ 41, 44; *see generally* ## 13-14, 25, 38)

The Court has not considered the documents appended to the plaintiffs' opposition briefs. Those exhibits mostly consist of email correspondence, none of which was attached to, or specifically referenced or relied upon in, the complaint. (*See* ## 1-1, 27-29) Some of the emails are incomplete, some are undated, and some were sent months after the conduct alleged in the complaint occurred. (*See* ## 27-29; *see also* ## 25-26, 38 (failing to explain on what basis the exhibits can be considered in the context of a motion to dismiss.)) Such documents cannot be used to avoid dismissal under Rule 12(b)(6). *See Alternative Energy, Inc.*, 267 F.3d at 33. Similarly, factual allegations set forth in the plaintiffs' briefs that do not appear in the amended complaint must be, and have been, disregarded. (*E.g.,* # 38 at 15 (alleging, for the first time, a $20,000 "'pay to play' inducement" involving Miller and another company)); *see Klein v. MHM Corr. Servs., Inc.*, No. 08-cv-11814, 2010 WL 3245291, at *2 (D. Mass. Aug. 16, 2010).

III.   <u>DISCUSSION</u>

     A.   <u>The Logo Masters Defendants</u>

As noted, when facing a Rule 12(b)(2) motion, the burden is on the plaintiffs to demonstrate that the court may properly exercise personal jurisdiction over the defendants. Here, a review of the allegations of the amended complaint and the plaintiffs' opposition reveals that the plaintiffs have failed to meet the *prima facie* standard.[7]  Merely stating that "minimum contacts exist between Defendants and Massachusetts sufficient to exercise personal jurisdiction over the parties" (#26 at 1) is not enough; it is incumbent upon the plaintiffs to provide the *facts* necessary to support that contention.  This the plaintiffs have utterly failed to do.

Even assuming, *arguendo*, that the court had personal jurisdiction over the Logo Masters defendants, these defendants nevertheless urge that the plaintiffs have "not set forth any theory of liability or allegations involving or implicating Logo Masters or Bierk in any of the purported causes of action."  (# 19 at 2)  The plaintiffs have offered no compelling argument to the contrary.

Only three paragraphs in the 126-paragraph amended complaint mention either of the Logo Masters defendants by name.  The first simply identifies the company's state of incorporation and principal place of business.  (# 1-1 at ¶ 10)  The second includes Mr. Bierk's title and business address, and also alleges:

> On information and belief, Logo Masters unfairly induced an employee of [BBJ] to accept employment from LogoMasters [sic] almost immediately upon [BBJ's] notice of termination as a MillerCoors licensee and the breach of their PTO agreement with Coors in April 2009.

(*Id.* at ¶ 11)  The third reference mentions Logo Masters in passing, alleging that MillerCoors "unfairly interfered with [BBJ's] ability to sell off its remaining inventory by . . . arranging for

---

[7]The plaintiffs have not filed an affidavit to supply additional pertinent facts, nor has a request been made to take discovery in order develop such facts.

one of [BBJ's] key salespeople to quit his job and obtain employment with (LogoMasters) [sic] a primary competitor of [BBJ] and broadcasting this information to others . . . ." (*Id.* at ¶ 48) Although the amended complaint is replete with references to "Defendant" or "Defendants," (*see, e.g., id.* at ¶¶ 1, 2, 15, 52-55, 57-59 (using both terms, sometimes within the same paragraph)), it is impossible to discern whether some or all of those references are intended to encompass the Logo Masters defendants. Indeed, it is possible none of them does, since no other paragraph contains facts regarding the sole action attributed to the Logo Masters defendants – their alleged hiring of a former BBJ salesman.

Moreover, the fact that Logo Masters hired a salesman who previously worked for BBJ does not, by itself, make out any "claim for relief that is plausible on its face." *Iqbal*, 566 U.S. at 678. The plaintiffs do not allege additional facts – such as the existence of an employment contract containing a non-compete clause – that might raise "a reasonable expectation that an actionable claim may exist" against the Logo Masters defendants. *See Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48, 51 (1st Cir. 2008).

Like their amended complaint, the plaintiffs' opposition brief recites almost exclusively actions attributed to the MillerCoors defendants, not the Logo Masters defendants. (*See, e.g.*, # 26 at 8-10 ("Introduction" section describing the case as arising from a "fraudulent scheme to induce Plaintiffs to purchase promotional and marketing material uniquely manufactured for . . . the exclusive benefit and purchase by Coors distributors and brewery sales representatives"); *id.* at 13-14 (discussing actions allegedly taken by Ms. Cusack, Coors, and MillerCoors.)) The plaintiffs generally assert that they have satisfied the pleading requirements set forth in Rules 8 and 9 without specifically addressing how they have stated claims against the Logo Masters

defendants in particular.[8]  (*Id*. at 10-13)

      The plaintiffs specifically address their factual allegations related to the Logo Masters

defendants, and the legal claims such facts support, only twice in their brief.  First, after referring

to a string of emails not attached to the amended complaint, in which a former BBJ employee

stated Logo Masters "is in the process of buying out" BBJ's inventory, the plaintiffs note their

"belie[f] that this material and its information readily support their claim for Commercial

Disparagement [in Count IX]." (*Id*. at 17)  Strangely, this assertion appears at the end of a

section of the plaintiffs' brief entitled "Interference with Advantageous Commercial Relations

Count VIII." (*Id*. at 16-17)  As they are pled, however, neither identified claim relates to Logo

Masters' hiring of a BBJ salesman or any buyout of BBJ's inventory.  Count VIII appears to

accuse Coors of interfering with BBJ's business relationships with various beverage distributors

by informing them that BBJ was no longer a licensee and had not fulfilled its contractual

obligations.  (# 1-1 at ¶¶ 89-92)  Count IX accuses unspecified defendants of telling BBJ's

customers that the plaintiffs "were not forthright and acted outside of Defendant's policies," (*id*.

at ¶ 94), and that they were "dangerous" and "disingenuous." ( *Id*. at ¶¶ 96-97)  Plaintiffs have

suggested no connection between their limited factual allegations pertaining to conduct by the

Logo Masters defendants and either of these claims.

      The second mention of factual allegations related to the Logo Masters defendants is in

the opposition brief's "Conclusion," where the plaintiffs again refer to the same emails and

---

      [8]In fact, portions of the plaintiffs' brief opposing the Logo Masters defendants' motion
appear to be copied-and-pasted from their brief opposing the MillerCoors defendants' motion,
and relate to arguments not raised by the Logo Masters defendants.  *Compare, e.g.*, # 26 at 15-16
(section entitled "Clarity of Pleadings Is Not a Factor in Dismissal"), *with* # 38 at 13 (containing
an identical section).

suggest that "[t]here is a reasonable basis to surmise that [Logo Masters] and [BBJ's former salesman] as well as MillerCoors were acting like vultures over the freshly slaughtered carcass of Plaintiffs['] business activities."[9] (#26 at 18) This pronouncement is not tied to allegations made in the amended complaint, nor does it make out a cause of action against the Logo Masters defendants.

Accordingly, the plaintiffs have failed to allege facts with respect to the Logo Masters defendants sufficient "to remove the possibility of relief from the realm of mere conjecture." *S.E.C. v. Tambone,* 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

B.      The Request for Sanctions

The Logo Masters defendants complain that they incurred attorneys' fees in responding "to what can only be called a patently deficient Complaint" and ask the Court to award them costs and fees "in responding to the Complaint and the Response to the Motions to Dismiss," or enter a show-cause order why such fees should not be granted. (# 32 at 6-7) They ask the Court to act under the Court's "inherent powers," citing *Chambers*, 501 U.S. at 46. (*Id.*) In a later pleading, they again move for costs, this time under 28 U.S.C. § 1927. (# 65)

In *Chambers,* the Supreme Court held that in three "narrowly defined circumstances" federal courts have inherent power to assess attorney's fees against counsel. 501 U.S. at 45. "The first, known as the 'common fund exception,' derives not from a court's power to control litigants, but from its historic equity jurisdiction, [citation omitted], and allows a court to award

---

[9]The plaintiffs also state that they "do not agree with Defendants' assertion that these two defendants did not induce any third party to breach a contract with Plaintiffs." (# 26 at 16) They do not, however, specify which contract or which third party they mean, nor do they explain how "these two defendants" induced a breach.

attorney's fees to a party whose litigation efforts directly benefit others." *Id.* Second, a court may assess attorney's fees as a sanction for the "willful disobedience of a court order." *Id.* Third, a court may assess attorney's fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45-46. The *Chambers* court characterized this as a finding "that fraud has been practiced upon [the court], or that the very temple of justice has been defiled." *Id.* at 46. The third circumstance is the only one that arguably applies in this case.

In *Chambers* the Supreme Court upheld the district court's imposition of sanctions where Chambers had engaged in a "sordid scheme of deliberate misuse of the judicial process" by means of "relentless, repeated fraudulent and brazenly unethical efforts." *Id.* at 57-58. The Court stressed that inherent power should be relied upon only when other available avenues of relief, such as the criminal contempt statute, 18 U.S.C. § 401, and Rule 11 of the Federal Rules of Civil Procedure, are not applicable. *Id.* at 50 (court "ordinarily should rely on the Rules rather than the inherent power... [b]ut if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power"); *accord United States v. Kouri-Perez*, 187 F. 3d 1, 5, 8 (1st Cir. 1999) (courts should use "inherent power" to sanction attorneys "with restraint and discretion"). In *Jones v. Winnepesaukee Realty*, 990 F.2d 1 (1st Cir. 1993), acknowledging that the court's inherent power should be used "sparingly and reserved for egregious circumstances," *id.* at 4, sanctions were upheld against litigants who "regularly defied court orders," lied to the court, and engaged in conduct "serving no apparent purpose other than to harass the court, burden the defendant, and delay a resolution of the case." *Id.* at 5-6.

"Considerable discretion is vested in a district judge to decide whether to impose sanctions and what form they should take." *Media Duplication Servs., Ltd. v. HDG Software, Inc.*, 928 F.2d 1228, 1238 (1st Cir. 1991) (citing *Lancellotti v. Fay,* 909 F.2d 15, 19–20 (1st Cir. 1990) (discussing Rule 11 sanctions); *Anderson v. Beatrice Foods Co.,* 900 F.2d 388, 393–94 (1st Cir. 1990) (same). The Court does not find that the plaintiff, Mr. Graves, or his attorney, Mr. Heal, have acted in defiance of the Court, or have engaged in "brazenly unethical conduct" of the sort described in the *Chambers* case as justifying the extraordinary use of the court's inherent powers. *See* 501 U.S. at 57-58. There is no evidence that Mr. Graves acted dishonestly, harassed defendants in bad faith, or did anything untoward other than rely on exceedingly bad legal advice concerning his case. Regarding attorney Heal, the evidence points toward his being severely impaired rather than deliberately wreaking havoc with the judicial system. At the oral argument on August 21, 2014, Mr. Heal had difficulty communicating verbally.[10] Further, his written pleadings are obviously the product of someone with a serious impairment.[11] Defendants complain that Mr. Heal lied to the Court in telling the Court in a pleading that he had drafted an amended complaint when he had not, and that he did not file an amended complaint by the

---

[10]At the hearing on August 21, 2014, Mr. Heal stated that he had suffered a stroke and had difficulty speaking. That was apparent: his argument was rambling and he struggled to find the correct words to express his thoughts.

[11]*See, e.g.*, document 57, styled as "Defendants' Status Report," which is actually the plaintiffs' status report, which contains sentences such as: "The motions to dismiss on the sufficiency of allegations are at once not of concern of the Plaintiffs but the Defendant counsel's spoken to time would like to argue the motion, which has been briefed and earlier scheduled." *Id.* at 1-2. This is one of many confusing emails he sent to opposing counsel, which demonstrates his inability to write clearly: "I had gone on and discuss how the simple subpoena is what we do in Federal practice. And then how I have seen the main case become a circus of side cases for discovery, each instantiated with a subpoena, etc. I elided it as surplusage." (# 66-3)

deadline set by the Court. (# 66 at 1) The Court, however, has no way of knowing whether Mr.

Heal in fact drafted an amended complaint, or tried to, but never filed whatever he drafted. His

failure to ever file an amended complaint was not a violation of a court order. The Court did not

order him to file one, but merely permitted him additional time if he wished to do so. In short,

the Court finds that Mr. Heal's conduct in pursuing the case against the Logo Masters

defendants, while certainly exasperating and costly to the defendants, is not in the vein of "bad

faith" that would justify the Court's exercising its rarely-used inherent authority to punish him.

The defendants also move that the Court "enter sanctions under 28 U.S.C. § 1927 against

plaintiffs' counsel and plaintiffs." (# 66 at 2, 11-12) That statute provides that:

> Any attorney or other person admitted to conduct cases in any court of the United
> States or any Territory thereof who so multiplies the proceedings in any case
> unreasonably and vexatiously may be required by the court to satisfy personally
> the excess costs, expenses, and attorneys' fees reasonably incurred because of
> such conduct.

28 U.S.C. § 1927. For purposes of the statute, conduct is "vexatious" when it is "harassing or

annoying, regardless of whether it is intended to be so." *Cruz v. Savage*, 896 F.2d 626, 632 (1st

Cir. 1990). While a subjective finding of bad faith is not required, the offending conduct must

be "more severe than mere negligence, inadvertence, or incompetence." *Id.*; *accord Lamboy-*

*Ortiz v. Ortiz-Velez*, 630 F.3d 228, 245-46 (1st Cir. 2010); *Jensen v. Phillips Screw Co.*, 546 F.3d

59, 64 (1st Cir. 2008); *McLane, Graf, Raulerson & Middleton, P.A. v. Rechberger,* 280 F.3d 26,

44 (1st Cir. 2002). The First Circuit has emphasized that § 1927 does not apply to

"'[g]arden-variety carelessness or even incompetence,' but instead requires that the 'attorney's

actions ... evince a studied disregard of the need for an orderly judicial process, or add up to a

reckless breach of the lawyer's obligations as an officer of the court.'" *Lamboy-Ortiz*, 630 F.3d

at 245-46 (quoting *Jensen*, 546 F.3d at 64).

The question whether sanctions are appropriate under § 1927 is closer than the one concerning sanctions under the court's inherent power, but again, the Court does not find that Mr. Heal's behavior has risen to the level where the District Court should impose sanctions. He has not acted with "a studied disregard of the need for an orderly judicial process." *See id.* The Court notes again that Mr. Heal's actions toward the Logo Masters defendants are based on incompetence rather than a willful breach of his obligations as an officer of the court. As a result, the Court recommends that the District Court deny the defendants' request for sanctions.

## C.    The MillerCoors Defendants

The 2009 License Agreement contains the following forum selection clause:

> All disputes under this Agreement shall be resolved by the courts of the State of Colorado including the United States District Court for Colorado and the parties consent to the jurisdiction of such courts, agree to accept service of process by mail, and hereby waive any jurisdictional or venue defenses otherwise available to it [sic].

(# 13 at § 12.02; *see also id.* at § 12.01 (stating agreement is governed by Colorado law.)) The MillerCoors defendants argue that this clause requires dismissal of all of the plaintiffs' claims against each of the MillerCoors defendants. (*See* # 11 at 5-9) I agree.[12]

Forum selection clauses, whether permissive or mandatory, "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable'

---

[12]"In this circuit, we treat a motion to dismiss on the basis of a forum selection clause as a motion alleging the failure to state a claim for which relief can be granted under Rule 12(b)(6)." *Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009). Additionally, forum selection clauses are treated the same under federal common law, Colorado law, and Massachusetts law. *See Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 320 (10th Cir. 1997); *CondoDomain LLC v. Colantuoni*, No. 11-cv-11446, 2011 WL 5027138, at *1 n.1 (D. Mass. Oct. 21, 2011). As such, there is no need to engage in a choice-of-law analysis.

under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10 (1972); *accord Rivera,* 575 F.3d at 18. To satisfy its burden, a resisting party must demonstrate "that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching," or that "enforcement would contravene a strong public policy . . . ." *M/S Bremen,* 407 U.S. at 15.

The clause at issue here is mandatory, *see* # 13 at § 12.02 ("*All* disputes . . . *shall* be resolved . . . .") (emphasis added), and the plaintiffs do not suggest otherwise. Furthermore, the plaintiffs have not challenged the validity of the clause, nor have they identified a "strong public policy" its enforcement would violate. They oppose dismissal solely on the basis that the License Agreement did not govern BBJ's participation in the PTO program. (# 38 at 4-7) According to the plaintiffs, the License Agreement pertained only to BBJ's sale of LPM. (*Id.*) The PTO program, they claim, was governed by a 2007 oral agreement with Coors, via Ms. Cusack, and a 2008 purchase order.[13] *Id.*

The distinction urged by the plaintiffs, however, is unavailing. The plaintiffs agree that the PTO program involved the production and distribution of merchandise featuring trademarked Coors and MillerCoors logos. (# 1-1 at ¶¶ 32, 49, 50) The plain language of the License Agreement reflects that it applied to all such logoed items. (*See, e.g.*, # 13 at 2 (containing "whereas" clauses broadly defining "licensed property" and "licensed products"); *id.* at § 2.01 (granting right to produce and sell "Licensed Products"); *id.* at § 8.05 (prohibiting use of

---

[13]Although the Plaintiffs claim in their opposition brief that Coors failed to honor its 2008 purchase order (# 34 at 6), that fact is not alleged in the amended complaint (*cf*. # 1-1 at ¶ 123) (alleging only that "*MillerCoors* has refused to pay [BBJ] $54,000.00 for the merchandise Plaintiffs did sell to *agents of MillerCoors* . . .").

licensed products except as provided in the agreement)). Although plaintiffs emphasize that the PTO program uniquely involved sale of "big ticket" items to Coors "distributors and representatives" (# 1-1 at ¶ 33), the License Agreement included provisions governing orders for "non-standard" items (# 13 at § 2.01), as well as sales made to MillerCoors representatives (*id*. at §§ 3.03, 3.04). As such, the features of the PTO program identified by the plaintiffs do not remove it from the scope of the License Agreement.

The plaintiffs further contend that their claims relate to promises made in 2007, before the License Agreement took effect in 2009. (#38 at 4-5, 7) This assertion, however, ignores the integration clause, which explicitly provides that the agreement "supersede[s] all other previous negotiations, commitments and writings" regarding the production and sale of licensed products. (# 13 at § 12.07) Furthermore, the alleged breach of the promises – and most other conduct forming the basis of the plaintiffs' claims – arose in 2009, after the License Agreement was executed. (# 1-1 at ¶¶ 46-50, 122-23) By that time, the relationship between the plaintiffs and the MillerCoors defendants, insofar as use of licensed products was concerned, was entirely defined by the 2009 License Agreement. (# 13 at § 12.07)

Because the plain language of the License Agreement encompasses the plaintiffs' involvement with the PTO program, the forum selection clause requires the plaintiffs to pursue all claims "arising under" the License Agreement in Colorado. (# 13 at § 12.02) Each of the plaintiffs' claims relates to the rights and responsibilities of the plaintiffs and the MillerCoors defendants with respect to the plaintiffs' selling of licensed products and, thus, should be dismissed based on the forum selection clause. Each claim either directly implicates the License Agreement, *see, e.g.*, # 1-1 at Counts IV, V (alleging contract-based claims), or arises from "the

same operative facts as [the] parallel claim for breach of contract" and primarily alleges "tortious conduct relating to the formation" and termination of the License Agreement, *Lambert v. Kysar*, 983 F.2d 1110, 1121-22 (1st Cir. 1993); (*see, e.g.*, # 1-1 at Counts I, II, III (alleging fraud, unfair and deceptive trade practices, and misrepresentations were used to induce BBJ to participate in the PTO program); # 25-1 at ¶ 6 (averring Mr. Graves sued to address claims arising from: the failure of Coors and MillerCoors to honor a purchase order; and Ms. Cusack's unfulfilled promise that Coors would compensate BBJ for unsold PTO inventory.))[14] All thirteen claims, therefore, "should be heard in the forum selected by the contracting parties." *Lambert*, 983 F.2d at 1122; *see CondoDomain*, 2011 WL 5027138, at *1 (dismissing contract claims and other claims "so closely intertwined" with them).

Finally, although only MillerCoors was a party to the License Agreement, the plaintiffs' claims against all MillerCoors defendants are subject to the forum selection clause.[15] The

---

[14]To the extent Count X, alleging civil RICO, does not arise under the License Agreement, it is subject to dismissal based on various deficiencies identified by the MillerCoors defendants. (*See* # 11 at 26-27 (citing the plaintiffs' failure to allege: predicate acts without speculative qualifiers; any pattern of racketeering activity; sufficient facts to satisfy Rule 9(b); or a causal link between the alleged activity and the plaintiffs' harm)). The additional facts cited by the plaintiffs in their brief to support their RICO claim are not included in their complaint (and, thus, cannot be considered here), and do not address how the conduct alleged caused harm to the plaintiffs. (*See* # 38 at 15-16)

[15]According to the MillerCoors defendants, the individual officers and directors named as defendants – Nicholas T. Long, president of MillerCoors; Peter Swinburn, CEO of Coors; and A. Douglas Brodman, president and director of Miller (collectively, "the CEO defendants") – have not been served, nor has James Sheehy (purchasing director for MillerCoors). Nevertheless, the MillerCoors defendants urge dismissal of the claims, without prejudice, against these defendants too. (*See* # 11 at 12 n.5) The plaintiffs have addressed neither the status of service of these defendants, nor the propriety of the MillerCoors defendants' arguments on their behalf. (*See generally*, ## 25, 38) The Court has considered all arguments with respect to each defendant. *Cf. Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery*, 44 F.3d 800, 802-03 (9th Cir. 1995) (upholding "dismissal with prejudice in favor of a party which had not yet appeared").

MillerCoors defendants are "closely related," both to one another and to the contractual issues underlying this dispute.  *See Barletta Heavy Div., Inc. v. Erie Interstate Contractors, Inc.*, 677 F. Supp. 2d 373, 379 (D. Mass. 2009).  Accordingly, all claims as to each of the MillerCoors defendants should be dismissed, without prejudice to their renewal in an appropriate forum in Colorado.[16]

IV.    CONCLUSION

    For the foregoing reasons, I respectfully RECOMMEND that the MillerCoors defendants' Motion to Dismiss (docket # 10) and the Logo Masters defendants' Motion to Dismiss (docket # 18) be ALLOWED.[17]  I FURTHER RECOMMEND that the motions for sanctions, (# 32 at 7, # 65), be DENIED.

                                                    /s / M. Page Kelley
                                                    M. Page Kelley
September 30, 2014                                   United States Magistrate Judge

---

[16]The MillerCoors defendants advance numerous alternative challenges to the individual claims in the complaint.  (*See* # 11 at 9-31)  Because the forum selection clause justifies dismissal, the Court need not reach those challenges.  Should the plaintiffs refile this action in the proper forum, the MillerCoors defendants will have the opportunity to reassert substantive challenges to the various claims before the Colorado court.

[17]The parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within fourteen days of receipt of this Report and Recommendation.  The written objections must identify with specificity the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  *See* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b).  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  *See Keating v. Secretary of Health & Human Servs.*, 848 F.2d 271, 274-75 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co*., 616 F.2d 603, 604-05 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).