UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BBJ, INC. and WESTON O. GRAVES, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 12-cv-11305-IT |
| | * | |
| MILLERCOORS, LLC, COORS | * | |
| BREWING COMPANY, MILLER | * | |
| BREWING COMPANY, and RENEE | * | |
| CUSACK, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM

July 21, 2015

TALWANI, D.J.

I.    Introduction

BBJ, Inc. and Weston Graves ("Plaintiffs") bring this action against MillerCoors, LLC ("MillerCoors"), Coors Brewing Company ("Coors"), Miller Brewing Company ("Miller"), and Renee Cusack ("Cusack") arising out of alleged misrepresentations and contracts between the parties for the sale of promotional merchandise between 2007 and 2009.  Presently before this court are Miller's Rule 12(b)(6) Motion to Dismiss [#108], Coors and Cusack's Rule 12(b)(6) Motion to Dismiss Based on Forum Selection Clause, or, in the Alternative, to Sever and Transfer [#104], MillerCoors's Rule 12(b)(6) Motion to Dismiss Based on Forum Selection Clause or, in the Alternative, to Sever and Transfer [#101], Plaintiffs' Motion to Sever and Stay or, in the Alternative, to Sever and Transfer Plaintiffs' Claims Against Defendant MillerCoors, LLC [#99], and several subsidiary motions.

II.     Factual Background

Plaintiffs allege the following facts in their Second Amended Complaint [#98]:

BBJ, Inc. is a company that markets and sells promotional merchandise for brewing and beverage companies.  Second Am. Compl. ¶ 3.  Weston Graves is BBJ, Inc.'s president.  Id. ¶ 1. Prior to and throughout 2007, BBJ, Inc. had licensing agreements with Coors and Miller for the sale of promotional merchandise under Coors and Miller's Licensed Promotional Merchandise ("LPM") programs.  Id. ¶¶ 12-23.

In July 2007, Cusack, a Coors employee, initiated discussions with BBJ, Inc. to induce BBJ, Inc. to become a distributor under Coors's Print to Order ("PTO") program.  Id. ¶ 25. Cusack explained that the PTO program was run differently than the LPM program, that as a PTO distributor BBJ, Inc. would be required to stock inventory of "big ticket" items not carried in the LPM program, and that the PTO program did not require a license.  Id. ¶¶ 26-27.  Cusack further explained that the PTO program would require BBJ, Inc. to stock approximately $2,000,000 in inventory, whereas the LPM program had previously required BBJ, Inc. to stock only $200,000 in inventory.  Id. ¶ 30.  When Graves expressed concern over the increased investment required to stock $2,000,000 in inventory, Cusack promised that Coors would help BBJ, Inc. sell through the inventory it stocked under the PTO program.  Id. ¶¶ 30-31.  BBJ, Inc. agreed to become a PTO distributor for Coors in reliance on Cusack's promise.  Id. ¶ 32.

In February 2008, BBJ, Inc. received a purchase order from Coors for $1,900,000 of merchandise under the PTO program as an inducement for BBJ, Inc. to increase its inventory to the levels required under the PTO program.  Id. ¶ 35; Mem. Supp. Mot. Dismiss or Transfer Ex. B [#105-2].  In May 2008, Plaintiffs entered into a new licensing agreement with Coors Global Properties, Inc. to continue participation in Coors's LPM program as well.  Second Am. Compl.

¶ 34; Mem. Supp. Mot. Dismiss or Transfer Ex. A [#105-1].  In June 2008, Miller and Coors created a joint venture known as MillerCoors.  Second Am. Compl. ¶ 36.  From November 2008 until April 2009, BBJ, Inc. invested capital in building its inventory for Coors's PTO program. Id. ¶ 39.  Additionally, in 2009, BBJ, Inc. and MillerCoors entered into a licensing agreement for the year 2009.  Id. ¶ 38.

In April 2009, MillerCoors and Coors notified BBJ, Inc. that they were terminating BBJ, Inc.'s licenses and that BBJ, Inc. would no longer be a distributor under Coors's PTO program. Id. ¶ 40.  Following this notification, "MillerCoors, Coors, and Miller breached Coors' express promise that it would help [BBJ, Inc.] . . . sell through its millions of dollars of purchased PTO inventory."  Id. ¶ 41.  As a result, BBJ, Inc. was left with "approximately 515,000 Coors branded items valued at approximately $2,000,626."  Id. ¶ 43.  Subsequently, MillerCoors, Coors, and Miller published false statements to two or more people "on the internet" that "Graves was disingenuous" and that BBJ, Inc. and Graves "were not forthright and acted outside of these Defendants' policies."  Id. ¶¶ 88-92.

III.    Procedural Background

MillerCoors, Miller, Coors, and Cusack previously moved to dismiss the claims against them based on a forum selection clause in the 2009 License Agreement, an agreement signed by Plaintiffs and MillerCoors.  See Mot. Dismiss [#10].  On September 30, 2014, a magistrate judge issued a Report and Recommendation recommending that the court allow the defendants' motion.  See Report & Recommendation [#76].  On January 20, 2015, the court issued an order adopting in part and denying in part the magistrate judge's recommendation.  See Order [#92]. In particular, the court held that MillerCoors, as a signatory to the 2009 License Agreement, was

3

entitled to enforce the forum selection clause.  The court did not, however, decide the proper

method for MillerCoors to enforce the forum selection clause or which claims against

MillerCoors fall within the scope of the forum selection clause.  The court further held that

Miller, Coors, and Cusack—who were not signatories to the 2009 License Agreement—had not

established that they were entitled to enforce the forum selection clause.  Ultimately, the court

denied the defendants' motion to dismiss without prejudice.

　　　　The court subsequently issued a Scheduling Order imposing deadlines for the parties to

file any motions to sever, transfer, or dismiss.  <u>See</u> Scheduling Order [#95].  The court further

granted Plaintiffs leave to amend their complaint for the limited purpose of replacing the terms

"Defendant" and "Defendants" with the names of the particular defendants referred to in each

allegation and count.  <u>Id.</u>  After Plaintiffs filed their Second Amended Complaint, the parties

filed their pending motions to dismiss and transfer, addressed below.


IV.　　<u>Miller's Motion to Dismiss</u>

　　　　Miller moves to dismiss all counts against it for failure to state a claim pursuant to

Federal Rule of Civil Procedure 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, a

complaint must allege sufficient facts "to state a claim to relief that is plausible on its face."  <u>Bell</u>

<u>Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  In resolving such a motion, the court must

accept all factual allegations in the complaint as true and draw all reasonable inferences in favor

of the plaintiff.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678-79 (2009).  The court need not, however,

accept the plaintiff's legal conclusions as true.  <u>Id.</u>

　　　　Although somewhat unclear, the Second Amended Complaint appears to bring the

following claims against Miller: Count I (Fraud), Count II (Mass. Gen. Laws ch. 93A), Count IX

(Commercial Disparagement), Count XI (Unjust Enrichment), Count XII (Open Account), and

Count XIII (Declaratory Relief).  In response to Miller's motion to dismiss, Plaintiffs assert that

they state plausible claims for interference with contractual relations, commercial disparagement,

and violation of Mass. Gen. Laws ch. 93A.  Plaintiffs do not oppose Miller's motion to dismiss

the remaining counts.  Accordingly, Miller's motion to dismiss Counts I (Fraud), XI (Unjust

Enrichment), XII (Open Account), and XIII (Declaratory Relief) is ALLOWED as unopposed.

      *A.*     *Interference with Contractual Relations*

      As stated above, Plaintiffs contend that they state a plausible claim against Miller for

interference with contractual relations.  "To make out a claim of tortious interference with

contractual relations, a plaintiff must demonstrate that '(1) he had a contract with a third party;

(2) the defendant knowingly induced the third party to break that contract; and (3) the

defendant's interference, in addition to being intentional, was improper in motive or means; and

(4) the plaintiff was harmed by the defendant's actions.'"  Cavicchi v. Koski, 855 N.E.2d 1137,

1141 (Mass. App. Ct. 2006) (quoting Draghetti v. Chmielewski, 626 N.E.2d 862, 868 (Mass.

1994)).

      Plaintiffs' Second Amended Complaint does not include a claim against Miller for

interference with contractual relations.  Plaintiffs did not list Miller in Count VIII, entitled

"Interference with Advantageous Commercial Relations."  Rather, Count VIII includes

allegations related only to Coors.[1]  In their opposition, Plaintiffs contend that Miller interfered

---

[1] See Second Am. Compl. ¶¶ 84-86 ("Defendant Coors knew of ongoing working relationships
between Plaintiff and BBJ Customers and Coors [sic] acts and conduct to disparage and inform
specific BBJ Customers of Plaintiffs' exclusion from the PTO program was a substantial
detriment and impediment to Plaintiff being able to perform its obligations to BBJ Customers
under their contractual agreement.  The actions of Defendant Coors to induce BBJ Customer not
to perform their obligations were improper in motive and means . . . .  As a direct and proximate
result Coors' actions, [BBJ, Inc.] has suffered substantial damages . . . .").

with contractual relations by "making false and disparaging statements about Plaintiffs and by encouraging Plaintiffs' customers not to do business with Plaintiffs anymore." Mem. Opp'n 12 [#119]. Plaintiffs, however, fail to allege the elements of a claim for interference with contractual relations against Miller in their complaint. Plaintiffs do not, for instance, allege that Miller knowingly induced third parties to break contracts with Plaintiffs. Nor do Plaintiffs allege that Miller's interference was improper in motive or means. Thus, to the extent that Plaintiffs attempt to bring a claim against Miller for interference with contractual relations in the Second Amended Complaint, Miller's motion to dismiss that claim is ALLOWED.

B.    *Commercial Disparagement*

Miller moves to dismiss Plaintiffs' commercial disparagement claim on two grounds. First, Miller contends that Plaintiffs failed to plead a false statement by Miller. Second, Miller contends that Plaintiffs failed to plead special damages with the requisite specificity.

To prevail on a commercial disparagement claim, a plaintiff must demonstrate that a defendant "(1) published a false statement to a person other than the plaintiff; (2) 'of and concerning' the plaintiff's products or services; (3) with knowledge of the statement's falsity or with reckless disregard of its truth or falsity; (4) where pecuniary harm to the plaintiff's interests was intended or foreseeable; and (5) such publication resulted in special damages in the form of pecuniary loss." HipSaver, Inc. v. Kiel, 984 N.E.2d 755, 763 (Mass. 2013).

As to the false-statement element, Plaintiffs allege that Miller published false statements to "two or more people" "on the internet" that Weston Graves "was disingenuous" and that "Sports Team and . . . Graves were not forthright and acted outside of [Miller's] policies." Second Am. Compl. ¶¶ 88-92. Although Plaintiffs do not provide many factual details regarding the alleged false statements, "the pleading standard Rule 8 announces does not require 'detailed

6

factual allegations.'"  See Iqbal, 556 U.S. at 678.  The court concludes that Plaintiffs allege facts plausibly suggesting that Miller published false statements concerning Plaintiffs.  Cf. Advanced Tech. Corp. v. Instron, Inc., 925 F. Supp. 2d 170, 183 (D. Mass. 2013) (dismissing commercial disparagement claim where plaintiff merely alleged that "Defendants have made a series of false statements . . . regarding the ABI technique," but did not allege the content of any false statement).

As to the special-damages element, in contrast, Plaintiffs' allegations in the complaint are insufficient.  Special damages are an "essential element of a cause of action for commercial disparagement."  HipSaver, Inc., 984 N.E.2d at 771.  To establish special damages, a plaintiff ordinarily must demonstrate that publication of the false statement resulted in "a specific loss of sales to identified customers."  Id. at 772.  There is, however, an exception to this general rule where the false statement has been "widely disseminated" such that "it would be impossible to identify particular customers who chose not to purchase a plaintiff's goods or services."  Id. at 772-73.  Under the "widespread dissemination" exception, "the rule requiring the identification of specific purchasers is relaxed and recovery is permitted for the loss of the market."  Id. at 773 (quoting Restatement (Second) of Torts § 633 cmt. h (1977)).  Under Federal Rule of Civil Procedure 9(g), "[i]f an item of special damages is claimed, it must be specifically stated."

Here, Plaintiffs allege that Miller's publication of false statements "cause[d] Plaintiffs to suffer special and general damages, including the monetary loss of many customers."  Second Am. Compl. ¶ 93.  Plaintiffs do not allege the names of any customers that they lost as a result of Miller's publication of a false statement.  Nor do Plaintiffs allege facts suggesting widespread dissemination of the false statement and diminution in sales following the widespread dissemination.  The court therefore concludes that Plaintiffs fail to allege sufficient facts to

support special damages under either the general rule or the exception.  See Bose Corp. v.

Consumers Union of U.S., Inc., 57 F.R.D. 528, 530 (D. Mass. 1973) (dismissing commercial

disparagement claim where plaintiff failed to allege the "loss of particular customers by name"

or "a general diminution in its business," such as through "facts showing an established business,

the amount of sales for a substantial period preceding the publication, the amount of sales

subsequent to the publication, facts showing that such loss in sales were [sic] the natural and

probable result of such publication, and facts showing that plaintiff could not allege the names of

particular customers who withdrew or withheld their custom" (quoting Erick Bowman Remedy

Co. v. Jensen Salsbery Labs., 17 F.2d 255, 261 (8th Cir. 1926)); see also Browning v. Clinton,

292 F.3d 235, 245 (D.C. Cir. 2002) ("A plaintiff can satisfy this pleading obligation by

identifying either particular customers whose business has been lost or facts showing an

established business and the amount of sales before and after the disparaging publication, along

with evidence of causation.").  Thus, Plaintiffs' commercial disparagement claim against Miller

is dismissed.  Plaintiffs may amend their complaint to properly allege special damages.

> C.     *Mass. Gen. Laws ch. 93A*

Miller moves to dismiss Plaintiffs' Chapter 93A claim on the ground that Plaintiffs fail to

allege that Miller engaged in unfair or deceptive conduct.  Conduct is unfair if it is "within at

least the penumbra of some common-law, statutory, or other established concept of unfairness."

PMP Assocs., Inc. v. Globe Newspaper Co., 321 N.E.2d 915, 917 (Mass. 1975).  Massachusetts

courts have recognized that defamation-based claims may be actionable under Chapter 93A.  See

Dulgarian v. Stone, 652 N.E.2d 603, 609 (Mass. 1995) ("Defamatory statements are actionable

under G.L. c. 93A."); Ellis v. Safety Ins. Co., 672 N.E.2d 979, 986 n.15 (Mass. App. Ct. 1996)

("[T]he conduct complained of in [plaintiff's] extant slander claim may be actionable under G.L.

c. 93A.").  Accordingly, for the reasons set forth in the prior section, Plaintiffs' Chapter 93A

claim (under a commercial-disparagement theory) is dismissed and Plaintiffs may amend their

complaint to properly allege special damages.


V.      Coors and Cusack's Motion to Dismiss or Sever and Transfer

        Coors and Cusack move to dismiss or, alternatively, to sever and transfer the claims

against them to the District of Colorado based on forum selection clauses in: (1) the 2008 MCGP

Distributor License Agreement ("2008 License Agreement"); and (2) Coors's "Purchase Order

Terms and Conditions" incorporated by reference into Coors's 2008 Purchase Order.  Plaintiffs

assert that Coors and Cusack are not entitled to enforce these forum selection clauses because (1)

neither Coors nor Cusack were signatories to the 2008 License Agreement, and (2) the "Purchase

Order Terms and Conditions" were never incorporated into the 2008 Purchase Order.  Coors and

Cusack reply that they are entitled to enforce the forum selection clause in the 2008 License

Agreement because the signatory to that agreement—Coors Global Properties, Inc.—was

dissolved and assigned its rights under the agreement to Coors in May 2008.

        A.      *Coors and Cusack's Motion to Dismiss*

        The First Circuit "treat[s] a motion to dismiss based on a forum selection clause as a

motion alleging the failure to state a claim for which relief can be granted under Rule 12(b)(6)."

Claudio-De Leon v. Sistema Universitario Ana G. Mendez, 775 F.3d 41, 46 (1st Cir. 2014)

(internal quotation marks and citation omitted).  In deciding a Rule 12(b)(6) motion to dismiss, a

court is ordinarily limited to considering "only the complaint, documents attached to it, and

documents expressly incorporated into it."  Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 72

(1st Cir. 2014).  When, however, "a complaint's factual allegations are expressly linked to—and

admittedly dependent upon—a document (the authenticity of which is not challenged), the document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)."  Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998).

In moving for dismissal, Coors and Cusack rely on certain documents, including Coors's "Purchase Order Terms and Conditions" and Patti Z. Beacom's affidavit stating that Coors Global Properties, Inc. was dissolved and assigned its rights under the 2008 License Agreement to Coors in May 2008.  These documents are not attached to or expressly incorporated into the complaint.  Nor do these documents fall within the exception applicable when the factual allegations in the complaint "are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged)."  See Beddall, 137 F.3d at 17.  Coors and Cusack cannot establish the applicability of either forum selection clause without these documents.  Coors and Cusack's motion to dismiss is therefore DENIED.

B.      *Coors and Cusack's Motion to Sever and Transfer*

Coors and Cusack also move to sever and transfer the claims against them based on forum selection clauses in two documents.  The First Circuit has left open the question of whether "forum selection clauses are to be treated as substantive or procedural for *Erie* purposes."  Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 16 (1st Cir. 2009) (quoting Lambert v. Kysar, 983 F.2d 1110, 1116 & n.10 (1st Cir. 1993)).  The court need not resolve which law applies in analyzing the applicability and enforceability of the forum selection clauses as there does not appear to be any material discrepancies between federal common law, Massachusetts law, and Colorado law on these matters.  See Huffington v. T.C. Grp., 637 F.3d 18, 23 (1st Cir. 2011); Excell, Inc. v. Sterling Boiler & Mech., Inc., 106 F.3d 318, 320 (10th Cir.

1997); Report & Recommendation 18 n.12 [#76].

> i.    *Forum Selection Clause in the Purchase Order Terms and Conditions*

Coors and Cusack contend that the 2008 Purchase Order between Coors and Plaintiffs incorporate by reference a document entitled "Purchase Order Terms and Conditions," which contains a forum selection clause.  The Purchase Order states: "The Company's Standard Terms and Conditions are incorporated by this reference."  Mem. Supp. Mot. Dismiss or Transfer Ex. B [#105-2].  Plaintiffs respond that the Purchase Order did not incorporate the "Purchase Order Terms and Conditions" by reference because (1) the Purchase Order referenced a document entitled "Standard Terms and Conditions," not "Purchase Order Terms and Conditions"; (2) Coors never provided Plaintiffs a copy of the "Purchase Order Terms and Conditions"; and (3) Plaintiffs never signed or initialed the "Purchase Order Terms and Conditions."

"Incorporation by reference is a common tool in the drafting of contracts."  Artuso v. Vertex Pharm., Inc., 637 F.3d 1, 7 (1st Cir. 2011).  In order for a document to be incorporated into a contract by reference, "the document to be incorporated [must] be referred to and described in the contract so that the referenced document may be identified beyond doubt." Schacter v. Circuit City Stores, Inc., 433 F. Supp. 2d 140, 143 (D. Mass. 2006) (quoting Lowney v. Genrad, Inc., 925 F. Supp. 40, 47 (D. Mass. 1995)); Chicopee Concrete Serv., Inc. v. Hart Eng'g Co., 498 N.E.2d 121, 122 (Mass. 1986); Taubman Cherry Creek Shopping Ctr., LLC v. Neiman-Marcus Grp., 251 P.3d 1091, 1095 (Colo. App. Ct. 2010); 11 R. Lord, Williston on Contracts § 30.25 (4th ed. 2015) ("As long as the contract makes clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt, the parties to a contract may incorporate contractual terms by reference to a separate, noncontemporaneous document . . . .").  "Additionally, in order to uphold the validity of terms incorporated by

reference, it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms . . . ."  11 R. Lord, Williston on Contracts § 30.25 (4th ed. 2015).

In the present case, Coors and Cusack have not established that the Purchase Order's reference to "[t]he Company's Standard Terms and Conditions" incorporated the document Coors and Cusack now provide entitled "Purchase Order Terms and Conditions."  Not only is there a discrepancy in the titles of the documents, but there is no other identifying information— such as dates or documents numbers—to alleviate the ambiguity.  See, e.g., Northrop Grumman Info. Tech., Inc. v. United States, 535 F.3d 1339, 1346-47 (Fed. Cir. 2008) (holding that a contract did not incorporate a letter where the contract "d[id] not refer to the Letter . . . explicitly, as by title or date, or otherwise in any similarly clear, precise manner").  Coors and Cusack have not established that Plaintiffs had knowledge of and assented to the terms contained in the "Purchase Order Terms and Conditions."  Accordingly, Coors and Cusack's motion to transfer based on the forum selection clause in the "Purchase Order Terms and Conditions" is DENIED.

ii.     *Forum Selection Clause in the 2008 License Agreement*

Coors and Cusack also move to sever and transfer the claims against them based on the forum selection clause in the 2008 License Agreement, an agreement signed by Plaintiffs and Coors Global Properties, Inc.  Coors contends that, although it is not a signatory to the agreement, it is entitled to enforce the forum selection clause because the agreement states that it "inur[s] to the benefit of [Coors Global Properties, Inc.'s] successors and assigns," and Coors is an assignee of the agreement.  Mem. Supp. Mot. Dismiss or Transfer Ex. A ¶ 12.04 [#105-1].  In support of this contention, Coors provides an affidavit from Patti Z. Beacom, stating that Coors Global Properties, Inc. was dissolved and assigned its intellectual property assets associated with the 2008 License Agreement to Coors in May 2008.  Mot. File Reply Ex. 1 [#116-2].

12

"[T]he threshold question in interpreting a forum selection clause is whether the clause at issue is permissive or mandatory."  Claudio-De Leon, 775 F.3d at 46 (quoting Rivera, 575 F.3d at 17).  In the present case, the parties do not dispute that the forum selection clause in the 2008 License Agreement is mandatory.  See Mem. Supp. Mot. Dismiss or Transfer Ex. A ¶ 12.02 [#105-1] ("All disputes under this Agreement *shall* be resolved by the courts of the State of Colorado . . . ." (emphasis added)).

"The next step in evaluating a forum selection clause is ascertaining its scope."  Claudio-De Leon, 775 F.3d at 47.  "This is a clause-specific analysis, so 'it is the language of the forum selection clause itself that determines which claims fall within its scope.'"  Id. (quoting Rivera, 575 F.3d at 19).  Forum selection clauses with "embracing language"—*e.g.*, "with respect to," "with reference to," "relating to," and "in connection with"—have typically been construed broadly.  See Huffington, 637 F.3d at 22.  In contrast, forum selection clauses with narrower language—*e.g.*, "to enforce" and "to construe"—have been construed as narrower in scope.  Id. at 23; see also id. at 22 ("[C]ourts describe the phrase 'with respect to' as synonymous with the phrases 'with reference to,' [and] 'relating to,' . . . and they have held such phrases to be broader in scope than the term 'arising out of' . . . ."); John Wyeth & Brother Ltd. v. CIGNA Int'l Corp., 119 F.3d 1070, 1075 (3d Cir. 1997) ("[T]he phrase 'arising in relation to' is broader than 'arising under' . . . ."); Jacobson v. Mailboxes Etc. U.S.A., Inc., 646 N.E.2d 741, 745 (Mass. 1995).

In the present case, the forum selection clause in the 2008 License Agreement states that it applies to "[a]ll disputes *under* this Agreement."  Mem. Supp. Mot. Dismiss or Transfer Ex. A ¶ 12.02 [#105-1] (emphasis added).  Coors and Cusack have not established that any of Plaintiffs' claims against them are disputes "under" the May 2008 License Agreement.  Rather, Plaintiffs' claims against Coors and Cusack appear to be based on prior representations and

contracts between the parties, including: (1) Cusack's 2007 oral representations to Plaintiffs regarding the PTO program, (2) Coors's PTO contract with Plaintiffs, and (3) Coors's February 2008 Purchase Order for items under the PTO program.  Plaintiffs allege that these prior representations and agreements relate to Coors's PTO program (rather than the LPM program) for which a license is not required.  Second Am. Compl. ¶ 27.

Coors and Cusack argue that Plaintiffs' claims are disputes "under" the 2008 License Agreement because the 2008 License Agreement contains an integration clause that integrates these prior negotiations and contracts.  Significantly, however, the integration clause in the 2008 License Agreement integrated all prior negotiations and contracts between Plaintiffs and Coors Global Properties, Inc., not all prior negotiations and contracts between Plaintiffs and Coors. Because Plaintiffs' claims appear to be based on separate, prior representations and contracts with Coors that were not integrated into the 2008 License Agreement with Coors Global Properties, Inc., Coors and Cusack have not established that Plaintiffs' claims are disputes "under" the 2008 License Agreement.  Accordingly, Coors and Cusack's motion to sever and transfer the claims against them based on the forum selection clause in the 2008 License Agreement is DENIED.

VI.    <u>Motions Relating to MillerCoors</u>

MillerCoors moves to dismiss or, alternatively, to sever and transfer the claims against it based on the forum selection clause in the 2009 License Agreement.  Plaintiffs move to sever and stay or, alternatively, to sever and transfer their claims against MillerCoors arising under the forum selection clause in the 2009 License Agreement.  In its January 20, 2015 Order, this court held that MillerCoors, as a signatory to the 2009 License Agreement, is entitled to enforce the

agreement's forum selection clause.  The court did not address which claims against MillerCoors fall within the scope of the forum selection clause or the proper method to enforce the forum selection clause in this case.  Plaintiffs' Second Amended Complaint appears to bring the following claims against MillerCoors: Count I (Fraud), Count II (Mass. Gen. Laws ch. 93A), Count IV (Breach of Covenant of Good Faith and Fair Dealing), Count IX (Commercial Disparagement), Count X (Civil RICO), Count XI (Unjust Enrichment), Count XII (Open Account), and Count XIII (Declaratory Relief).

     A.    *Scope and Enforcement of the 2009 License Agreement's Forum Selection Clause*

"[I]t is the language of the forum selection clause itself that determines which claims fall within its scope."  <u>Rivera,</u> 575 F.3d at 19.  Additionally, the First Circuit has held that "contract-related tort claims" involving the "same operative facts" as the parallel contract claims that are subject to the forum selection clause should also be litigated in the forum chosen by the parties. <u>See</u> <u>Lambert</u>, 983 F.2d at 1121-22; <u>see also</u> <u>Rivera</u>, 575 F.3d at 24.

The language of the forum selection clause in the 2009 License Agreement states that it applies to "[a]ll disputes under this Agreement."  Mot. Dismiss Ex. A ¶ 12.02 [#13].[2] Significantly, the 2009 Licensing Agreement contains an integration clause that states that the agreement "supersede[s] all other previous negotiations, commitments and writings" between MillerCoors and Plaintiffs.  <u>Id.</u> ¶ 12.07.  In considering the language of the forum selection clause and integration provision in the 2009 License Agreement, the court concludes that the

---

[2] The court considers the 2009 License Agreement in deciding MillerCoors's Rule 12(b)(6) motion to dismiss as Plaintiffs have not objected to MillerCoors's reliance on this agreement and the agreement falls within the exceptions allowing consideration of a document outside of the complaint when the document is "sufficiently referred to in the complaint," <u>see</u> <u>Watterson v. Page</u>, 987 F.2d 1, 3 (1st Cir. 1993), and when the "complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged)," <u>see</u> <u>Beddall</u>, 137 F.3d at 17.  <u>See, e.g.</u>, Second Am. Compl. ¶¶ 38-40.

following claims against MillerCoors either are disputes "under" the 2009 License Agreement or arise out of the same operative facts as the disputes "under" the 2009 License Agreement: Count I (Fraud), Count IV (Breach of Covenant of Good Faith and Fair Dealing), Count XI (Unjust Enrichment), Count XII (Open Account), and Count XIII (Declaratory Relief).  These counts are therefore subject to the forum selection clause in the 2009 License Agreement.

In contrast, MillerCoors has not established that the claims in Count IX (Commercial Disparagement), Count II (violation of Mass. Gen. Laws ch. 93A under a commercial disparagement theory), and Count X (Civil RICO) are disputes "under" the 2009 License Agreement or arise out of the same operative facts as the disputes "under" the 2009 License Agreement.  Plaintiffs' RICO claim is based on statements in MillerCoors's tax returns that are unrelated to the other causes of action in this litigation.[3]  Additionally, Plaintiffs' claims for commercial disparagement and violation of Chapter 93A (under a commercial disparagement theory) appear to be based on certain statements—*e.g.*, statements that Plaintiffs were "disingenuous" and "not forthright"—allegedly made by MillerCoors after and unrelated to the alleged formation and breach of any contracts by the defendants.[4]  Accordingly, Counts II (Chapter 93A), IX (Commercial Disparagement), and X (Civil Rico) are not subject to the forum selection clause and shall remain in this action.

The court must next address the proper method for enforcing the forum selection clause for all claims that that fall within its scope, including Counts I, IV, XI, XII, and XIII against

---

[3] The court notes that, although there is no pending Rule 12(b)(6) motion to dismiss Count X, Plaintiffs' Civil RICO claim may be vulnerable to a Rule 12(b)(6) motion.  Accordingly, Plaintiffs may consider omitting this claim from their amended complaint.

[4] Plaintiffs' commercial disparagement claim against MillerCoors suffers from the same pleading deficiencies regarding special damages discussed above. The court thus grants Plaintiffs leave to amend Count IX against MillerCoors in order to properly allege special damages.  In the absence of such an amendment, Count IX may be subject to dismissal pursuant to a Rule 12(b)(6) motion.

MillerCoors.  Plaintiffs request that the court sever the claims subject to the forum selection clause.  Federal Rule of Civil Procedure 21 empowers the court to "sever any claim against a party."  "The decision to separate parties or claims is a case management determination 'peculiarly within the discretion of the trial court.'"  Acevedo-Garcia v. Monroig, 351 F.3d 547, 558 (1st Cir. 2003) (citation omitted).  Under Rule 21, the court may sever claims or parties "when doing so would serve the ends of justice and further the prompt and efficient disposition of the litigation."  In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., 214 F.R.D. 152, 154 (S.D.N.Y. 2003) (internal quotation marks and citation omitted).  Plaintiffs further request that the court stay the claims subject to the forum selection clause until after resolution of the remaining claims.  "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  Landis v. N. Am. Co., 299 U.S. 248, 254 (1936).  Thus, the decision "whether to stay proceedings involves balancing the interests of the parties and the Court.  A stay is appropriate where it is likely to conserve judicial and party time, resources, and energy."  Bank of Am., N.A. v. WRT Realty, LP, 769 F. Supp. 2d 36, 39 (D. Mass. 2011) (internal quotation marks and citation omitted).

The court concludes that neither a severance nor a stay is warranted in this case. Plaintiffs' claims against MillerCoors involve overlapping issues of law and fact with the claims against the other defendants.  See, e.g., Second Am. Compl. ¶ 41 ("MillerCoors . . . breached Coors' express promise . . . .").  Thus, concerns for judicial economy weigh against a severance or stay.  Moreover, any further delay would be inappropriate and prejudicial in light of the fact that this case is nearly three years old and only at the pleading stage of litigation.

MillerCoors requests that the court dismiss the claims that are subject to the forum

selection clause under Rule 12(b)(6). The First Circuit has held that after Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex., 134 S. Ct. 568 (2013), "the use of Rule 12(b)(6) to evaluate forum selection clauses is still permissible in this Circuit." Claudio-De Leon, 775 F.3d at 46 n.3. Accordingly, given the specific posture of this case, the court holds that Plaintiffs' claims against MillerCoors in Counts I (Fraud), IV (Breach of Covenant of Good Faith and Fair Dealing), XI (Unjust Enrichment), XII (Open Account), and XIII (Declaratory Relief) are dismissed without prejudice based on the forum selection clause in the 2009 License Agreement.

VII.    Conclusion

Miller's Rule 12(b)(6) Motion to Dismiss [#108] is ALLOWED IN PART and DENIED IN PART. Miller's motion to dismiss Counts I (Fraud), XI (Unjust Enrichment), XII (Open Account), and XIII (Declaratory Relief) is allowed as unopposed. To the extent that Plaintiffs attempt to bring a claim for tortious interference with contractual relations against Miller, that claim is dismissed. Plaintiffs' claims against Miller in Counts IX (Commercial Disparagement) and II (Chapter 93A) are dismissed with leave to file an amended complaint that sufficiently alleges special damages.

Coors and Cusack's Motion for Leave to File, Instanter, Reply [#116] is ALLOWED. Plaintiffs' Cross-Motion to Strike Affidavit of Patti Z. Beacom [#117] is DENIED. Coors and Cusack's Rule 12(b)(6) Motion to Dismiss Based on Forum Selection Clause, or, in the Alternative, to Sever and Transfer [#104] is DENIED.

MillerCoors's Rule 12(b)(6) Motion to Dismiss Based on Forum Selection Clause or, in the Alternative, to Sever and Transfer [#101] is ALLOWED IN PART and DENIED IN PART.

MillerCoors's motion to dismiss or, alternatively, to transfer Counts II (Chapter 93A), IX (Commercial Disparagement), and X (Civil Rico) is denied.  MillerCoors's motion to dismiss Counts I (Fraud), IV (Breach of Covenant of Good Faith and Fair Dealing), XI (Unjust Enrichment), XII (Open Account), and XIII (Declaratory Relief) is allowed; these counts are dismissed without prejudice.  Plaintiffs' <u>Motion to Sever and Stay or, in the Alternative, to Sever and Transfer Plaintiffs' Claims Against Defendant MillerCoors, LLC</u> [#99] is DENIED.

Plaintiffs may file an amended complaint in accordance with this Memorandum and Order no later than August 5, 2015.  If Plaintiffs do not file an amended complaint by August 5, 2015, Coors, Cusack, and MillerCoors shall file an answer or responsive pleading by August 20, 2015.  If Plaintiffs file an amended complaint by August 5, 2015, Miller, Coors, Cusack, and MillerCoors shall file an answer or responsive pleading by August 20, 2015.

IT IS SO ORDERED.

/s/ Indira Talwani
United States District Judge

Date:   July 21, 2015

19