UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BBJ, INC. and WESTON O. GRAVES, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 12-cv-11305-IT |
| | * | |
| MILLERCOORS, LLC, COORS | * | |
| BREWING COMPANY, MILLER | * | |
| BREWING COMPANY, and RENEE | * | |
| CUSACK, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

February 23, 2016

TALWANI, D.J.

I.      Introduction

Presently before the court is Coors Brewing Company's ("Coors") and Renee Cusack's

("Cusack") Rule 12(c) Motion for Judgment on the Pleadings [#162] seeking dismissal of the

Third Amended Complaint [#127] brought by BBJ, Inc. ("BBJ") and Weston Graves ("Graves")

(collectively, "Plaintiffs").  For the reasons set forth below, the motion is ALLOWED IN PART

and DENIED IN PART.

II.     Coors' and Cusack's Rule 12(c) Motion

A Federal Rule of Civil Procedure 12(c) motion for judgment on the pleadings "is treated

much like a rule 12(b)(6) motion to dismiss."  Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29

(1st Cir. 2008); see also Patrick v. Rivera-Lopez, 708 F.3d 15, 18 (1st Cir. 2013) (Rule 12(b)(6)

and Rule 12(c) are ordinarily accorded the same treatment).  A Rule 12(c) motion differs from a

Rule 12(b)(6) motion primarily in that it "implicates the pleadings as a whole." Curran v. Cousins, 509 F.3d 36, 43 (1st Cir. 2007); Aponte-Torres v. Univ. of Puerto Rico, 445 F.3d 50, 54-55 (1st Cir. 2006).  To survive a motion for judgment on the pleadings, a plaintiff "must state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In reviewing a 12(c) motion, the court views "the facts contained in the pleadings in the light most favorable to the party opposing the motion . . . and draw[s] all reasonable inferences in [that party's] favor."  Curran, 509 F.3d at 43.

A.      The alleged fraud and misrepresentation claims against Coors and Cusack.

Plaintiffs' claims under Counts I (Fraud and Deceit), II (Mass. Gen. Laws ch. 93A §11), and III (Intentional and/or Negligent Misrepresentation) center on the same set of alleged facts. Plaintiffs allege that Coors and Cusack made "knowing and willful false statements" to Plaintiffs "to induce their reliance to purchase substantial amounts of promotional material."  Third Am. Compl. [#127, ¶ 46].  Plaintiffs state that in July 2007, Cusack engaged in discussions with BBJ staff to consider becoming a PTO distributor.  Id. ¶ 25.  Specifically, Plaintiffs allege that Cusack stated that "the PTO program was 100% funded by the brewery" and that "Coors promised that the Brewery would help BBJ sell through all the PTO merchandise the company agreed to carry."  Id., ¶¶ 28, 31.  Plaintiffs further allege that Coors and Cusack "knowingly and intentionally" made the fraudulent statements to commit Plaintiffs to the PTO, and that Coors and Cusack "knew or reasonably should have known the Sports Team would not sell and these Defendants would be able to obtain these products at bargain prices when Plaintiffs' business was restricted from selling Miller Coors promotional items."  Id. ¶ 47.  Plaintiffs allege that as a

result of these fraudulent statements, they were "deprived of property of substantial value" and

Coors and Cusack "have been and may continue to be unjustly enriched." Id. ¶ 48.

       1.      Count I - Fraud and Deceit (Coors and Cusack)

     Coors and Cusack move to dismiss Count I, arguing that Plaintiffs have not set forth the

specific facts required under Federal Rule of Civil Procedure 9 for a fraud claim.  Rule 9(b)

requires particularity when pleading fraud or mistake.  Iqbal, 556 U.S. at 686. [1]  To recover for

fraudulent misrepresentation under Massachusetts law, Plaintiffs must plead with particularity

that Coors and Cusack "'made a false representation of a material fact with knowledge of its

falsity for the purpose of inducing the plaintiff to act thereon.'"  Masingill v. EMC Corp., 870

N.E.2d 81, 88 (Mass. 2007) (quoting Kilroy v. Barron, 95 N.E.2d 190, 191 (Mass. 1990)).

Courts in this circuit have "'uniformly held inadequate a complaint's general averment of the

defendant's 'knowledge' of material falsity, unless the complaint *also* sets forth specific facts

that make it reasonable to believe that defendant knew that a statement was materially false or

misleading.'"  Id. (quoting Greenstone v. Cambex Corp., 975 F.2d 22, 25 (1st Cir. 1992)

(citations omitted) (emphasis original).  Plaintiffs then must show that they relied upon the

representation as true and acted upon it to their detriment.  Masingill, 870 N.E.2d at 88.

     Here, although the allegations are thin, Plaintiffs have alleged sufficient facts as to

Cusack's and Coors' allegedly false statements made for the purpose of committing Plaintiffs to

the PTO program to survive a motion to dismiss on Count I, fraud and deceit.

       2.      Count II - Mass. Gen. Laws ch. 93A §11 (Coors and Cusack)

     Coors and Cusack argue that Plaintiffs' Mass. Gen. Laws ch. 93A claims must meet Rule

---

[1] Rule 9(b)'s heightened pleading standard applies to state law fraud claims asserted in federal court. N. Am. Catholic Educ. Programming Found., Inc., 567 F.3d 8, 13 (1st Cir. 2009) (citing Universal Commc'n[s] Sys., Inc. v. Lycos, Inc., 478 F.3d 413, 427 (1st Cir. 2007)).

9(b)'s heightened pleading requirement, and that the facts alleged do not rise to a violation under ch. 93A.  To bring a claim under ch. 93A Plaintiffs must "establish (1) that the defendant engaged in an unfair method of competition or committed an unfair or deceptive act or practice, as defined by [] ch. 93A, § 2, or the regulations promulgated thereunder; (2) a loss of money or property suffered as a result; and (3) a causal connection between the loss suffered and the defendant's unfair or deceptive method, act, or practice."  Auto Flat Car Crushers, Inc. v. Hanover Ins. Co., 17 N.E.3d 1066, 1074-75 (Mass. 2014).  An ordinary breach of contract is not an unfair trade practice under ch. 93A.  To rise to the level of a ch. 93A violation, a breach must be both "knowing and intended to secure 'unbargained-for benefits' to the detriment of the other party."  Zabin v. Picciotto, 896 N.E.2d 937, 963 (Mass. App. Ct. 2008) (quoting NASCO, Inc. v. Public Storage, Inc., 29 F.3d 28, 34 (1st Cir. 1994)).

Plaintiffs' facts alleging Coors made willful false statements to induce Plaintiffs to become PTO distributors are sufficient to survive a motion to dismiss Count II, ch. 93A.

3.      Count III - Intentional and/or Negligent Misrepresentation (Coors and Cusack)

Coors and Cusack argue that Plaintiffs' complaint fails to state a claim for intentional and/or negligent misrepresentation.  Under Massachusetts law, a plaintiff asserting a claim for intentional or negligent misrepresentation must show "'a false statement of material fact made to induce the plaintiff to act and reliance on the false statement by the plaintiff to his detriment.'"  Edlow v. RBW, Inc., 688 F.3d 26, 36 (1st Cir. 2012) (quoting McEneaney v. Chestnut Hill Realty Corp., 650 N.E.2d 93, 96 (Mass. 1995)).  For an intentional misrepresentation claim, the defendant must know that the statement was false, and for a negligent misrepresentation claim, the defendant must have made the false statement without a reasonable basis for believing it to be true.  See O'Connor v. Merrimack Mut. Fire Ins. Co., 897 N.E.2d 593, 600 (Mass. App. Ct.

2008); see also Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc., 918 N.E.2d 36, 47 (Mass. 2009) ("Unlike fraud, negligent misrepresentation does not require an intent to deceive or actual knowledge that a statement is false.").

Here, the allegations that form the basis for Plaintiffs' fraud claim are sufficient to survive a motion to dismiss Count III, intentional and/or negligent misrepresentation.

      B.      The breach of contract and unjust enrichment claims against Coors

Plaintiffs' claims under Counts IV (Breach of Covenant of Good Faith), V (Breach of Contract), VI (Quantum Meruit), VII (Promissory Estoppel), and XII (Open Account) are based on the allegation that in 2007 the parties orally agreed that Plaintiffs would become a PTO distributor for Coors and would consequently increase their inventory of PTO merchandise.  In exchange, Coors allegedly agreed to fund the PTO program 100% and to help Plaintiffs sell through any unsold PTO inventory.  Third Am. Compl. [#127 at ¶¶ 24-32, 35, 65-68].  "Coors and Sports Team entered into an agreement whereby Coors promised to buy from the Sports Team substantial amounts of PTO promotional merchandise for use by Coors' distributors in connection with several planned promotional campaigns Coors developed, implemented and supervised on a national scale each year."  Id. ¶ 24.  The expectation, according to the complaint, was that Plaintiffs would purchase these materials so that Coors' distributors and representatives would have immediate access to them.  Id. ¶ 29.  In return, Coors would help Plaintiffs sell any remaining inventory.

      1.      Count V- Breach of Contract (Coors)

Coors argues that Plaintiffs fail to allege the essential elements that demonstrate breach of contract. Under Massachusetts law, a breach of contract claim requires "the plaintiff to show that (1) a valid contract between the parties existed, (2) the plaintiff was ready, willing, and able

to perform, (3) the defendant was in breach of the contract, and (4) the plaintiff sustained damages as a result." Bose Corp. v. Ejaz, 732 F.3d 17, 21 (1st Cir. 2013); Weiler v. PortfolioScope, Inc. 12 N.E.3d 354, 361 (Mass. 2014) ("covenant of good faith and fair dealing is implied in every contract.").

As alleged, the facts are sufficient to demonstrate a contract between the parties. While generally a contract must specify all material terms, in a sale of goods contract "'[a] term which measures the quantity by the output of the seller or the requirements of the buyer means such actual output or requirements as may occur in good faith,' and no amount need be specified." Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc., 864 N.E.2d 518, 533 (Mass. App. Ct. 2007) (citing Mass. Gen. Laws ch. 106, § 2-306(1)).

Coors' argument that Plaintiffs' breach of contract claim is barred by the statute of frauds is unavailing. If an oral agreement can be performed within one year, the statute of frauds does not apply. Boothby v. Texon, Inc., 608 N.E.2d 1028, 1035 (Mass. 1993) ("The Statute of Frauds applies only to contracts which by their terms cannot be performed within the year. It does not apply to contracts which may be performed within, although they may also extend beyond, that period.") (internal quotation marks and citation omitted). On the face of the complaint it cannot be said that the contract for the sale of PTO goods could not be performed within one year.[2]

---

[2] Plaintiffs and Defendants have each filed a copy of a purchase order that was executed between them. Affidavit of Weston Graves in Supp. of Pls.' Opp'n to Mot. to Dis. [#115, ex. A], and Mem. in Supp. of Coors' and Cusack's Mot. to Dis. [#139, ex. 1]. The purchase order has an order date of 2/06/2008 and a delivery date of 12/28/2008, a time frame clearly within the one year limit for the statute of frauds. "In reviewing a motion under Rule 12(c), as in reviewing a Rule 12(b)(6) motion, we may consider 'documents the authenticity of which are not disputed by the parties; . . . documents central to plaintiffs claim; [and] documents sufficiently referred to in the complaint.' Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (under Rule 12(b)(6)). This is true even when the documents are incorporated into the movant's pleadings." Curran, 509 F.3d at 44 (alterations original).

Plaintiffs have also alleged sufficient facts asserting a breach of that contract. Plaintiffs allege that they performed the contract, having bought approximately 515,000 Coors branded items valued at roughly $2,000,626.00, but that Coors failed to help them sell through this inventory. Third Am. Compl. [#127, ¶43]. Coors' failure to help Plaintiffs sell this inventory represents the alleged breach. Id. ¶ 43. "A breach occurs when one party violates the reasonable expectations of the other." Chokel v. Genzyme Corp., 867 N.E.2d 325, 329 (Mass. 2007). These facts are sufficient at the motion to dismiss stage to state a claim for Count V, breach of contract.

        2.     Count IV - Breach of Covenant of Good Faith and Fair Dealing (Coors)

Coors also argues that Plaintiffs have failed to allege a breach of the covenant of good faith and fair dealing. The covenant of good faith and fair dealing provides that "neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Anthony's Pier Four, Inc. v. HBC Assocs., 583 N.E.2d 806, 820 (Mass. 1991) (citation and quotation marks omitted). Plaintiffs allege that Coors fraudulently represented that they would fund the PTO program 100% and would help sell through any unsold PTO inventory. Pls.' Mem. of Law in Supp. of Opp'n to Defs.' Rule 12(c) Mot. for Jud. on Plead. [#166 at 9], and Third Am. Compl. [#127 at ¶¶ 24-32, 35, 65-68]. "The purpose of the covenant 'is to guarantee that the parties remain faithful to the intended and agreed expectations' of the contract . . ." Liss v. Studeny, 879 N.E.2d 676, 680 (Mass. 2008) (quoting Uno Rest. Inc. v. Boston Kenmore Realty Corp., 805 N.E.2d 957, 964 (Mass. 2004). As alleged, Coors' failure to help Plaintiffs sell through the excess PTO inventory constitutes a breach of the covenant of good faith. Plaintiffs have thus alleged sufficient facts to withstand the motion to dismiss on Count IV, breach of the covenant of good faith.

3.      Count VI - Quantum Meruit (Coors)

Coors argues that Plaintiffs' claim for quantum meruit must be dismissed because under Massachusetts law, a claim for quantum meruit will not lie when there is an express contract governing a relationship. Mem. in Supp. of Coors' and Cusack's Mot. to Dis. [#139 at 19]. While Plaintiffs may not be able to recover under both theories, Federal Rule of Civil Procedure 8(d) permits Plaintiffs to plead alternative and even inconsistent legal theories. Fed. R. Civ. P. 8(d)(3), Lass v. Bank of Am., N.A., 695 F.3d 129, 140 (1st Cir. 2012).

To state a claim for quantum meruit, Plaintiffs must allege that they conferred a measurable benefit upon Coors, that a reasonable person in Coors' position would have accepted the services with the expectation of compensating Plaintiffs, and that Plaintiffs provided the services with the expectation of receiving compensation. "The underlying basis for awarding quantum meruit damages in a quasi-contract case is unjust enrichment of one party and unjust detriment to the other party. The injustice of the enrichment or detriment equates with the defeat of a person's reasonable expectations." Liss, 879 N.E.2d at 682 (internal citation omitted). Here, Plaintiffs have alleged sufficient facts to survive a motion to dismiss. Specifically, Plaintiffs allege that they agreed to act as PTO distributor for Coors at Coors' request and that they substantially increased their inventory to satisfy Coors' requirements despite their concerns. Third Am. Compl. [#127, ¶30, 31, 32]. According to the complaint, Coors requested that Plaintiffs become a PTO distributor so that Coors' merchandise would be available to distributors and representatives. Id. ¶¶ 24-27. Such allegations are sufficient to survive a motion to dismiss for Count VI, quantum meruit.

4.     Count VII - Promissory Estoppel (Coors)

Coors argues that Plaintiffs' claim for promissory estoppel must be dismissed for failure to state sufficient facts demonstrating that Coors intended to carry out its promises.  Mem. in Supp. of Coors' and Cusack's Mot. to Dis. [#139 at 11].  Promissory estoppel requires that one party make a promise that induces another to reasonably rely on that promise.  R.I. Hosp. Nat. Bank v. Varadian, 647 N.E.2d 1174, 1178 (Mass. 1995) (there must be "an unambiguous promise and that the party to whom the promise was made reasonably relied on the representation.").  "Circumstances that may give rise to an estoppel are (1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission."  Anzalone v. Admin. Office of the Trial Court, 932 N.E.2d 774, 786 (Mass. 2010).

Plaintiffs state that Coors falsely represented to Plaintiffs that Coors was funding the PTO program 100% and that Coors would help BBJ sell through the products for anything that might not have sold.  Third Am. Compl. [#127, ¶ 28, 31].  This promise was allegedly made to induce Plaintiffs to join the program.  Id. ¶ 47.  As a result of Coors' promises, Plaintiffs purchased increased PTO merchandise.  Additionally, as alleged in the complaint, Plaintiffs were left with excess inventory after their participation in the PTO program was cancelled.  Such allegations are sufficient at the motion to dismiss stage for Count VII, promissory estoppel.

5.     Count XII - Open Account (Coors)

Coors argues that Plaintiffs allege no facts to support their claim of open account, and further argue that there are no allegations that Coors owes Plaintiffs $54,000.  Mem. in Supp. of Coors' and Cusack's Mot. to Dis. [#139 at 27].  To recover on a theory of an open account,

Plaintiffs are required to prove the elements of a contract, as well as the "correctness of the account and the reasonableness of the charges."   Rachael's Boutique, Inc. v. Cabral, No. 12-ADMS-40017, 2013 WL 3242013, at *3 (Mass. App. Div. June 21, 2013).  Plaintiffs allege that Coors' "agents received the products and or services requested to be provided to Plaintiff that the Coors and Miller agents used for the purposes intended.  Plaintiffs invoiced Coors . . . for the products shipped and Plaintiffs reasonably expected to receive payment for the invoices submitted."  Third Am. Compl.  [#127, ¶¶ 115, 116].  Such allegations are sufficient at the motion to dismiss stage for Count XII, open account.

      C.      The commercial relations claims against Coors

The same set of operative facts give rise to Plaintiffs' claims under VIII (Interference with Advantageous Commercial Relations) and IX (Commercial Disparagement).  Plaintiffs allege that Coors interfered with their business relationships by publishing on the internet that Plaintiffs "were not forthright and acted outside of . . . Defendants' policies," that Coors' false statements caused customers to regard Plaintiffs as "dangerous" and "dishonest," and that Coors' false statements resulted in the loss of customers.  Third Am. Compl. [#127 ¶¶ 88-93].  Plaintiffs also allege that Coors induced "BBJ customers to not perform on their obligations" by misrepresenting that Plaintiffs were not fulfilling certain contractual obligations.  Id. ¶ 85.  Plaintiffs further identify the names of particular customers that Plaintiffs allegedly lost as a result of Coors' statements, as well as Plaintiffs' sales figures for those customers.  Id. ¶¶ 95, 96.

      1.      Count VIII - Interference with Advantageous Commercial Relations (Coors)

Coors argues that Plaintiffs have failed to allege any facts that give rise to a claim of interference with commercial relations.  Specifically, Coors argues that Plaintiffs do not allege any facts that show that Coors knowingly induced a breaking of Plaintiffs' customer

relationships.  "To make a successful claim for intentional interference with advantageous

relations, the plaintiff must prove that (1) he had an advantageous relationship with a third party

(e.g., a present or prospective contract or employment relationship); (2) the defendant knowingly

induced a breaking of the relationship; (3) the defendant's interference with the relationship, in

addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed

by defendant's actions."  <u>Blackstone v. Cashman</u>, 860 N.E.2d 7, 12-13 (Mass. 2007).

Plaintiffs' allegation that Coors statements induced BBJ's customers not to perform

contractual obligations state a claim for Count VIII, interference with advantageous commercial

relations.

### 2.      Count IX - Commercial Disparagement (Coors)

Coors avers that Plaintiffs have failed to allege a false statement made by Coors that

would demonstrate a valid commercial disparagement claim.  To prevail on a commercial

disparagement claim, a plaintiff must demonstrate that the defendant "(1) published a false

statement to a person other than the plaintiff; (2) of and concerning the plaintiff's products or

services; (3) with knowledge of the statement's falsity or with reckless disregard of its truth or

falsity; (4) where pecuniary harm to the plaintiff's interests was intended or foreseeable; and (5)

such publication resulted in special damages in the form of pecuniary loss."  <u>HipSaver, Inc. v.

Kiel</u>, 984 N.E.2d 755, 763 (Mass. 2013) (internal citation and quotation marks omitted).

Plaintiffs' allegations that Coors; published false statements on the internet suffice at this

stage to state a claim for Count IX, commercial disparagement.

### D.      <u>The claim for a RICO violation against Coors</u>

Coors moves to dismiss Count X, Plaintiffs' claim under the  Racketeer Influenced and

Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968.  This count alleges that "[o]n

information and belief, Defendants Coors and MillerCoors knowingly . . . may have submitted federal and state tax returns that may contain expenses incurred by the corporation from its agents and distribution sales personnel offering gift cards, trips and other inducements."  Third Am. Compl. [#127, ¶ 102].  Plaintiffs further allege that "Coors' and MillerCoors' filing of false and misleading federal tax returns are a predicate act that violate the Civil RICO law."  Id. ¶ 104. Coors argues that Plaintiffs allege no facts to demonstrate what, when, or how Coors committed mail fraud, that Plaintiffs have failed to plead the existence of an enterprise, and that Plaintiffs have failed to plead a pattern of racketeering.  Mem. in Supp. of Coors' and Cusack's Mot. to Dis. [#139 at 21-23].

   To state a claim under RICO, Plaintiffs must allege that Coors conducted an enterprise through a pattern of racketeering activity.  Libertad v. Welch, 53 F.3d 428, 441 (1st Cir. 1995). Moreover, under RICO's civil damages provision, Plaintiffs must allege facts demonstrating that they were "injured in [their] business or property by reason of" the RICO violation.  See 18 U.S.C. § 1964(c); see also Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985) ("[T]he plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the [RICO] violation.").  "Constitutional standing requires an 'injury in fact,' a 'causal connection between the injury and the conduct complained of,' and a likelihood that 'the injury will be redressed by a favorable decision.'"  In re Auerhahn, 724 F.3d 103, 116 (1st Cir. 2013) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)); see also George Lussier Enters., Inc. v. Subaru of New England, Inc., 393 F.3d 36, 51 (1st Cir. 2004) ("Section 1964(c) requires that the defendant's specified acts of racketeering were the proximate cause of the plaintiffs' injuries.").  Plaintiffs fail to allege or otherwise demonstrate facts indicating that they suffered an injury caused by Coors' allegedly

false tax returns or Coors' alleged "inducements" to "distribution sales personnel."  Accordingly,

Count X, Plaintiffs' claim under RICO is dismissed for lack of standing.

E.   The claim for Declaratory Relief against Coors

Plaintiffs seek a declaratory judgment from the court stating that Coors is obligated to

pay for the goods provided and services performed by Plaintiffs.  Third Am. Compl. [#127,

¶ 22].  Coors argues that Plaintiffs fail to state a claim for declaratory relief because a declaratory

judgment may only be issued if there is a live case or controversy.  Mem. in Supp. of Coors' and

Cusack's Mot. to Dis. [#139 at 27].  Under Massachusetts law, a controversy exists where there

is "'real dispute caused by the assertion by one party of a legal relation, status or right in which

he has a definite interest, and the denial of such assertion by another party also having a definite

interest in the subject matter . . ."  Libertarian Ass'n of Mass. v. Sec'y of Commonwealth, 969

N.E.2d 1095, 1103 (Mass. 2012) (quoting School Comm. of Cambridge v. Superintendent of

Schs. of Cambridge, 70 N.E.2d 298 (1946)).  At the motion to dismiss stage, Plaintiffs have

adequately stated a claim for Count XIII, declaratory relief.

III.   Conclusion

For the forgoing reasons, Coors' and Cusack's Rule 12(c) Motion for Judgment on the

Pleadings [#162] is ALLLOWED as to Count X (RICO), and is otherwise DENIED.  IT IS SO

ORDERED.

/s/ Indira Talwani

Date:   February 23, 2016                    United States District Judge